# Andrews, Executor, Appellant, *v.* Andrews et al.

*Leases—Oil and gas lease—Construction—Surrender—Presumption—Wills—Intention.*

1. The surrender of an oil and gas lease will not be presumed from the failure of the lessee to explore for oil and gas within a reasonable time from the execution of the lease if it appear that thereby the lessee will be permitted to retain royalties to which otherwise the lessor or his assigns would be entitled.

2. The owner of oil land leased it to three of his younger sons with the exclusive right of drilling for oil and gas, and reserving a certain royalty; the term of the lease was not fixed, but in case oil or gas should be discovered the lease was to run as long as either was found in paying quantities; it was stipulated that one well should be completed within three years unless there should be unavoidable delay or accident, and that the lessee should have the right at any time to surrender the lease; that all the conditions between the parties should extend to their heirs, executors and assigns; thereafter the owner of the land died, having devised the farm to such sons by a will which further provided that "should oil or gas be found on the farm under the now existing lease, and by the lessees or any other lessees the......royalty shall be set aside as part of my estate and be divided among my two eldest sons and my three daughters, in proportion to sums each one has been willed by the foregoing indenture." Eight years after the lease was made and seven years after testator's death the sons completed a well and in subsequent years drilled other wells which resulted in the production of considerable oil. In a suit in equity brought by the executor of the testator for an accounting for oil produced under the lease, defendants contended that, as they were the owners of the farm, they had succeeded to the rights of testator as lessor and that from the lapse of time during which no wells had been drilled, a surrender of the lease would be presumed. The lower court dismissed the bill. *Held,* the plainly expressed intention of testator was to preserve the royalty as part of his estate, to be divided among his children, other than defendants; that to presume

a surrender of the lease from the fact that the lessees had not opened the well within a reasonable time, would permit defendants to take advantage of their own wrong, and in the absence of evidence of a surrender as contemplated by the lease, the lease must be deemed to be in full force and effect, and the decree was reversed with directions to reinstate the bill.

Argued Oct. 4, 1916.    Appeal, No. 158, Oct. T., 1916, by plaintiff, from decree of C. P. Beaver Co., Dec. T , 1914, No. 1, in equity, for defendants, on bill in equity for an accounting, in case of J. Morton Andrews, Executor of Joseph Andrews, v. Charles T. Andrews, George B. Andrews and Frank Andrews. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Bill in equity for an accounting.    Before BALDWIN, P. J.

The opinion of the Supreme Court states the facts.

The plaintiff filed, among others, certain requests for conclusions of law, which, with the court's answers, were as follows:

"First: That by force and virtue of the provisions of said will, that when said defendants accepted the lands in said will devised to them, they accepted the same charged with the burden of accounting to the executor of said will for the one-eighth of the oil produced from said lands.

"Answer: Refused."    (7)

"Second: That said defendants must account to said plaintiff for the one-eighth of all the oil produced or to be produced by them or their assigns from the lands described in said lease.

"Answer: Refused."    (6)

The court found as a conclusion of law "That by force and virtue of the provisions of said will, when the defendants accepted the lands devised to them in and by said will, they accepted the same charged with the burden of accounting to the executor of said will for one-eighth of

the oil produced from said lands, provided oil should be obtained from said lands within a reasonable time under the said lease," (5) and entered the following decree: "And now, to wit, June 17, 1916, this cause came on to be heard, at this term, was argued by counsel and upon consideration thereof, it is ordered, adjudged and decreed, viz: That the bill be dismissed at the cost of plaintiff." (8)

The court on final hearing dismissed the bill. Plaintiff appealed.

*Errors assigned,* among others, were the refusal to affirm plaintiff's requests for conclusions of law (6, 7); the court's conclusion of law (5); the decree of the court (8); and also the court's failure to decree that the defendant should account to the plaintiff for the one-eighth of the oil and gas produced from said premises from the date of the filing of the bill and that the defendants pay the costs of the suit. (9)

*A. P. Marshall,* with him *J. L. Holmes,* for appellant.

*Harold F. Reed,* of *Reed and Reed,* for appellees.

OPINION BY MR. JUSTICE POTTER, January 8, 1917:

This was a bill in equity, filed to secure an accounting for royalty due under an oil and gas lease. The controlling question is, whether the lease was in force when the operations were carried on. Defendants contend that it had then been surrendered, and that they operated upon land to which, at the time, they had an absolute title.

Joseph Andrews owned a tract of land in Beaver County, Pennsylvania, which, upon December 24, 1901, he leased to three of his sons, the defendants, for the purpose, and with the exclusive right, of drilling for oil and gas. The term of the lease was not fixed, but, in case oil or gas was discovered, it was to run as long as either

was found in paying quantities, and it was stipulated
that one well should be completed within three years,
unless there should be unavoidable delay or accident.
It was agreed that the lessees should have the right at
any time to surrender the lease, and that all the condi-
tions between the parties should extend to their heirs,
executors and assigns.   On January 8, 1902, the said
Joseph Andrews made his last will and testament, which,
contained the following clause: "I will and bequeath to
my three sons, George B. Mc. Andrews, Charles T. An-
drews and Frank Andrews, my farm and all its improve-
ments, situate in Hanover Township, in the County of
Beaver, and State of Pennsylvania, each one to have one
equal share forever.   I also direct that they shall pay to
my remaining heirs out of the farm such sums as may be
required to make up the sums I bestow upon the remain-
ing heirs."   The will contained the further provision:
"Should oil and gas be found on the farm under the now
existing lease, and by the lessors or any other lessors
[meaning lessees or any other lessees], the one-eighth
royalty shall be set aside as a part of my estate and be
divided among my two eldest sons, J. M. Andrews and
John C. Andrews, and my three daughters, in propor-
tion to sums each one has been willed by the foregoing
indenture."   On February 4, 1902, Joseph Andrews died,
and the title to the land became vested in the defendants,
in fee simple, subject, however, to the terms and condi-
tions of the oil lease.   They did not, however, complete
a well within three years, and it was not until 1909, that
they undertook to produce oil from the land, by putting
down one well.   In the year 1913, and the early part of
1914, six other wells were drilled, which resulted in the
production of considerable oil, aggregating in value more
than $49,000, down to the date of the filing of the bill in
this case.   The court below held that the lessees were
entitled to a reasonable time to begin operations under
the lease, and that, under the circumstances, a reasona-
ble time would be something more than three years, but

less than seven, and that the failure to proceed within the latter period was in itself evidence of abandonment of the lease. He suggested that as defendants took title to the land under the will, subject to the lease, a surrender to themselves would have been a useless formality, and, therefore, while no actual surrender was made, as provided for in the lease, one could be presumed from the length of time during which no action was taken by defendants under the lease. He, therefore, dismissed the bill.

The clear purpose of the lessor was to have his land explored for oil and gas, and while the lessees did not expressly agree to operate, yet the obligation to do so arose by necessary implication. The inducement to the lessor was that he was to have one-eighth of all the oil produced. The lessor dealt liberally with the lessees, and gave them three years in which to complete one well, and even then he did not impose a forfeiture of the lease, as penalty for noncompliance. Had the lessor lived he no doubt would have insisted upon action by the defendants within a reasonable time, or have insisted upon a forfeiture in order to procure other and more energetic lessees. It is not to be presumed that, in giving defendants title to the land subject to the lease, he intended to offer a premium for bad faith upon their part. Yet to sustain the view of the trial judge, means that the defendants, deeming it to their interest to do so, could remain passive, and refrain from operating for a few more years, and thus relieve themselves of the obligation to pay royalty under the lease, and take all the oil themselves. This would be to enable them to take advantage of their own wrong. True, they had the right to make an actual surrender of the lease at any time. But this would hardly be consistent with good faith, unless they actually intended to abandon the idea of drilling upon the land for oil and gas. It would not have been good faith to postpone the work with the idea of evading the payment of the royalty. As lessees of the farm they

owed a duty first to the lessor, and afterwards to those whom the lessor in his will designated as successors to his rights in that respect.   Nothing in the language of the will justifies the defendants in assuming that they have succeeded to the rights of the testator as lessor. Those rights were reserved and bequeathed to the other children of testator.   As was said in Ray v. Western Penna. Natural Gas Co., 138 Pa. 589: "No case has been brought to our notice in which the lessee was allowed to take advantage of his own wrong, or to set up his own default, to work a forfeiture of his own contract."   In the present case, the plainly expressed intention of the testator was to preserve the royalty as part of his estate, to be divided among his children, other than defendants. Had the farm been devised to others, the defendants would no doubt have strenuously resisted any threatened forfeiture of the lease, on the ground that, under the circumstances, the delay did not justify such action. Had they in good faith intended to abandon the idea of drilling for oil or gas upon the farm, it would have been a simple matter to have given notice of their intention to the parties who were entitled to the royalty under the lease.   The evidence shows no attempt, on the part of defendants, to surrender the lease in the manner prescribed by its terms.   It must, therefore, be regarded as in full force and effect.

The fifth, sixth, seventh and eighth assignments of error are sustained.   The decree of the court below is reversed, the bill is reinstated, and it is ordered and directed that the record be remitted to the court below, for further proceedings in accordance with this opinion. The costs of this appeal to be borne by the appellees.