## Brilhart v. M. E. Anderson Agency, Inc.

*H. Robert Hampson,* for plaintiff.
*John Kookogey,* for defendants.

WOLFE, *P.J.,* April 16, 1980—This is an action by plaintiff to quiet title to certain premises in Triumph Township consisting of 100 acres, more or less, subject to oil rights owned by defendants.[1]

Defendants' claim to the oil rights dates to December 19, 1888 when the surface of the premises were severed from the sub-surface and a mineral deed was created by the conveyance of W. F. Burdick and wife to H. B. Porter and M. W. Quick. The conveyance provides that for the sum of $450 Burdick conveyed to Porter and Quick all of the petroleum oil and gas in and under certain premises in the Township of Triumph, the subject matter of the within action.

The habendum clause of the conveyance provides:

"Whenever the oil or gas on said premises become exhausted said second parties in consideration of $1.00 to be paid them, hereby agree to quitclaim to

---

1. By stipulation of counsel the parties have agreed that all of defendants' rights have now been assigned to Gray, Todd and Gray, Inc. and that company substituted as the party defendants.

said Burdick all their title in the interest hereby acquired; and all the estate, right, title, interest, property, claim and demand whatsoever of the said parties of the first part, in law, equity or otherwise howsoever of, in and to the oil and gas right hereby conveyed and every part thereof."

Factually there is no disagreement. Initially there were approximately 32 oil and gas wells drilled on the premises but there has been no activity of any nature whatsoever since 1949. It is therefore plaintiff's position that the premises have become "exhausted" of oil and gas and since he is now the surface owner he has a right to have the sub-surface quitclaimed to him by defendants upon the tender of $1 to them.

Defendants argue that, notwithstanding the agreed lack of any drilling or oil production operations since 1949, nonetheless this does not mean that no oil or gas exists and that deeper drilling could possibly produce oil or gas and therefore there has not been an exhaustion of them.

We have been given no cases and our independent search does not reveal any interpretation of the habendum clause as herein utilized. The deed is rather unique when compared to modern oil and gas leases in that there is no reservation of royalties to the grantor but rather a fee conveyance for a stated consideration. There is some inference in the deed W. F. Burdick was either in the agricultural or lumbering business and desired to have no interference with this activity. The deed in this regard provides: "Provided that all roads made or use-by said second parties are to be so made or used so as not to hinder said Burdick in the pursuit of agriculture or lumber purposes and so as not to prevent travel upon the said roads."

Although this may not be of any assistance in the resolution of the issue, it does indicate that the parties to the indenture had contractual concepts more in mind than the formation of a commercial oil and gas lease. In any event it is apparent reading the instrument from its four corners the parties intended a reconveyance to the grantor when the oil and gas became exhausted. We can further conclude that the drilling of 32 wells and the production of same without any activity from that date[2] reasonably exhausted the oil and gas that could be removed profitably under the technology methods known at that time.

It is defendants' argument that, despite the length of time that there has been no activity, because of the nature of the interest created and the sub-surface there can be no abandonment of defendants' rights. The courts have not made this interpretation notwithstanding the nature of the interest created. There has been no different interpretation of a habendum clause creating a separate estate from that of a leasehold only. In 1A Summers, Oil and Gas § 136, we find this language and reference to the cases therein cited:

"Granted that a landowner has powers to create separate interests in oil and gas by grant or exception, it naturally follows that he may create such interests for years, for life, or in fee, and the courts so hold (citations omitted). Separate estates or interests in oil or gas may be created for a definite term of years and as long thereafter as oil or gas is produced from the land in paying quantities. Where the 'thereafter' clause is used in instruments creating separate estates or interests in oil or gas, the

2. 1949

courts have usually held that it has the same meaning as when it is used in the habendum clause of an oil and gas lease. Thus, if there is no production within the definite term, the estate or interest terminates but if there is production within the definite term, the estate or interest continues as long as the production continues."

A footnote containing a citation of Wilson v. Holm, 164 Kan. 229, 237, 188 P. 2d 899 (1948), is worthy of note:

"Upon consideration of the foregoing authorities we see no sound reason why the general principles of law, heretofore stated, governing the construction of oil and gas leases containing habendum clauses providing the estate conveyed shall continue after the expiration of its primary term so long as oil or gas is produced in paying quantities, should not be applicable to the construction of a mineral deed containing identical or similar provisions".

Pennsylvania had adopted this general habendum interpretation as noted in Andrews v. Andrews, 256 Pa. 24, 100 Atl. 521 (1917). There, the court held a lessor has the right to expect to have his land explored for oil and gas even if the lessee did not expressly agree to do so, and stated at p. 28: "[T]he obligation to do so arose by necessary implication." "The clear purpose of the lessor was to have his land explored for oil and gas and while the lessees did not expressly agree to operate, yet the obligation to do so arose by necessary implication."

The term of the lease was not fixed, but in case oil or gas should be discovered the lease was to run as long as either was found in paying quantities.

Applying these principles to the instant case we agree with plaintiff's argument the parties contemplated the oil and gas to be exhausted in a commercial and not in a technical or literal sense. We believe it is apparent the parties to the initial conveyance mutually intended that in point of time after proper exploration and development the oil and gas would become exhausted and of no further value to the grantees. History has made this apparent since there have been no operations to remove oil or gas for a period of 30 years.

Finally, defendants argue the obligation to quitclaim the deed to Burdick is a personal covenant and not extended to the heirs and assigns of Burdick. As we read the entire instrument it makes reference to the heirs and assigns of both parties both in the vesting clause and the habendum clause as well as the warranty provision and only in this isolated reference is the operation of the right limited to Burdick. We conclude it would be a strained interpretation to conclude only Burdick had an interest in the reconveyance. It was Burdick who was the grantor and who did so for his heirs and assigns, who also made warranty of the premises for his heirs and assigns and created the interest in the estate for his heirs and assigns. We therefore conclude plaintiff has a right to have title made quiet due to the exhaustion of the oil and gas on said premises as conveyed and we enter the following

## JUDGMENT

And now, April 16, 1980, it is ordered defendants, their heirs and assigns be forever barred from asserting any right, lien, title or interest in the land inconsistent with the interest or claim of plaintiff as set forth in plaintiff's complaint.

It is further ordered that the deed of W. F. Burdick and wife to H. B. Porter and M. W. Quick dated December 19, 1888 and as entered in Deed Book 65, page 216 is cancelled and discharged.

The prothonotary is authorized and directed to enter the within order upon the judgment docket and certify a copy thereof to the recorder of deeds who shall index the within order.

Defendants are granted 10 days after notice of the filing of the within decision and judgment to take exceptions thereto pursuant to Pa.R.C.P. 1067 and 1038. In default of such exceptions the prothonotary shall, on praecipe, enter final judgment on the decision.