J. P. ROSE *et al.* v. THE LANYON ZINC COMPANY.

No. 13,368. (74 Pac. 625.)

SYLLABUS BY THE COURT.

1. WRITTEN CONTRACT—*Oral Testimony Inadmissible.* An unambiguous written contract, complete in its terms, expresses its own meaning, and statements of witnesses can neither add to, nor detract from, that signification.

2. OIL AND GAS LEASE—*Forfeiture.* In the absence of a stipulation to that effect, a contract granting the right of drilling and operating for oil and gas upon real estate cannot be forfeited for a breach of one of its terms.

3. ———— *Contract Construed.* A contract granting the right of drilling and operating for oil and gas upon real estate construed.

Error from Allen district court; L STILLWELL, judge. Opinion filed December 12, 1903. Affirmed.

*Oscar Foust & Son,* and *Baxter D. McClain,* for plaintiffs in error.

*Campbell & Goshorn, C. E. Benton,* and *J. B. F. Cates,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: On May 25, 1897, J. P. Rose and Emma Rose entered into the following agreement in writing with the Palmer Oil and Gas Company:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, J. P. Rose and Emma Rose, his wife, of the first part, hereby grant unto the Palmer Oil and Gas Company, of Fostoria, Ohio, second party, successors and assigns, all the oil and gas in and under the following-described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water; to erect, maintain and remove all buildings, structures, pipes, pipe-lines and machinery necessary for the production and transportation of oil, gas or water; provided, that first party shall have the right to use said premises for farming purposes except such part as is actually occupied by second party, namely: A lot of land situated in the township of Elm, county of Allen, in the state of Kansas, and is described as follows, to wit: N. E. ¼ of section No. 9, township No. 25, range No. 19, containing 160 acres, more or less.

"The above grant was made on the following terms:

"1. Second party agrees to drill a well upon said premises within one year from this date, or thereafter pay to first party forty dollars annually until said well is drilled, or the property hereby granted is conveyed to the first party.

"2. Should oil be found in paying quantities upon the premises, second party agrees to deliver to first party in tanks, or in the pipe-line with which it may connect the well or wells, the one-tenth part of all the oil produced and saved from said premises.

"3. Should gas be found, second party agrees to pay to first party fifty dollars annually for every well from which gas is used off the premises.

"4. The first party shall be entitled to enough gas free of cost for farm and domestic use on said prem-

ises as long as second party shall use gas off said premises under this contract, but shall lay and maintain the service pipe at his own expense and use said gas at his own risk.

"The said party of the second part further to have the privilege of excavating for water and of using sufficient water, oil and gas from the premises herein leased to run the necessary engines for the prosecution of said business.

"5. Second party shall bury, when requested to do so by the first party, all gas lines used to conduct gas off of said premises and pay all damages to timber and crops by reason of drilling or the burying, repairing or removal of lines of pipe over the said premises.

"6. No well shall be drilled nearer than 300 feet to any building on said premises, nor occupy more than one acre.

"7. Second party may at any time remove his property and reconvey the premises hereby granted, and thereupon this instrument shall be null and void.

"8. A deposit to the credit of lessor in Allen County Bank to the account of any of the money payments herein provided for shall be a payment under the terms of this lease.

"9. If no well shall be drilled upon said premises within five years from this date, second party agrees to reconvey, and thereupon this instrument shall be null and void.

"10. A failure by second party to comply with any of the above conditions shall render this lease null and void.

"11. The acre rental as provided for in first clause shall be paid until the oil or gas is used by second party or the lease abandoned. First party may use gas from the Fitzpatrick well as long as second party holds said lease.

"In witness whereof, the parties have hereunto set their hands and seals this 25th day of May, A. D. 1897.

[seal.]    JOSEPH ROSE.
[seal.]    EMMA ROSE.
[seal.]    THE PALMER OIL AND GAS COMPANY.
                 By L. C. BEATTY, Agent."

The instrument was duly acknowledged by the grantors and was filed for record in the county in which the land lies.

On July 27, 1897, the Palmer Oil and Gas Company executed and delivered to J. P. Rose a supplemental instrument relating to a part of the subject-matter of clause 10 of the original contract, as follows :

"*To Whom it May Concern:*

"We having leased the farm of Joseph P. Rose for oil and gas purposes, a part of the consideration of which is the right to use gas from the Fitzpatrick well No. 1, or Palmer well No. 14, situated on N. W. $\frac{1}{4}$ of sec. 10–25–19 : Now, this is to empower the said Joseph P. Rose to make connection with said well as freely as we might do ourselves under the terms of our lease on said N. W. $\frac{1}{4}$ of sec. 10–25–19.

THE PALMER OIL AND GAS COMPANY.<br>By L. C. BEATTY, <em>Agent.</em>"

The Lanyon Zinc Company succeeded to all the rights of the Palmer Oil and Gas Company under these instruments.

In January, 1901, J. P. Rose and Emma Rose commenced an action against the Lanyon Zinc Company for the forfeiture and cancelation of the contract set forth above.   On the trial of the action the plaintiffs made an offer of proof, under their pleadings, for the purpose of establishing a right to a judgment nullifying the contract.   This offer was rejected as incompetent, irrelevant, and immaterial, and was as follows :

"Plaintiffs offer to prove by J. P. Rose, plaintiff, witness now on the stand, and other witnesses, that, at the time of the execution of the contract of lease to the Palmer Oil and Gas Company, set forth in plaintiff's petition, it was the distinct understanding and agreement that the lease should terminate whenever the Palmer Oil and Gas Company, or its assigns, should

fail to furnish gas from the Fitzpatrick or other wells referred to, for use for domestic purposes for himself and family; that the said contract and supplemental contract of July 27, 1897, were made and intended by the parties to give this right to the plaintiffs for the use of natural gas, and as one of the considerations for said lease; that the plaintiffs, relying upon said contract, prepared their stoves and lights in their residence for the use of natural gas, which rendered the stoves unsuitable for other fuel, and did attach to the Fitzpatrick well and used natural gas until on or about January 1, 1900, in midwinter, when the said well became obstructed, and the said Palmer Oil and Gas Company and its assigns wholly neglected and refused to place said well in condition to furnish gas to the plaintiffs; and that L. C. Beatty, the general agent of the defendant, stated that the said lease would terminate whenever they failed to furnish gas, and they refused to furnish it, or to do anything with the well; and that since said date, to wit, January 1, 1900, the plaintiff has had no use whatever of gas from said Fitzpatrick or any other wells of the defendant; that the plaintiffs were refused permission at their own expense to repair the said Fitzpatrick well or to in any manner work about it or attempt to remove the obstructions from said well."

On the trial it was either admitted or established by proof that plaintiffs owned the land in question; that no well had been put down and no operation had been commenced for that purpose; that forty dollars per year for each year subsequent to that ending May 25, 1898, had been paid to plaintiffs, or had been deposited to their account; that plaintiffs had refused to receive any payment except for the years 1898 and 1899, and that they had served upon the defendant, prior to beginning suit, a notice and declaration of forfeiture.

Some evidence was introduced relating to other wells put down by the defendant and wells put down by other persons and acquired and operated by the

Rose v. Lanyon.

defendant, all in the immediate vicinity of the land in question, in an attempt to show that the defendant was taking advantage of the fugacious quality of gas to exhaust it from under plaintiff's land without sinking a well thereon.   The court found generally for the defendant, and rendered judgment in its favor.

The offer of proof was rightfully denied.   Under the well-understood rules of law, the written contract, complete in its terms, expressed its own meaning, and statements of witnesses could neither add to, nor detract from, that signification.   The lease itself created no right of forfeiture for any deprivation of benefit from the Fitzpatrick well.   The tenth subdivision of the lease provided for its nullification only for a failure to comply with the nine stipulations preceding it.   Subdivision 11 and the supplemental writing relating to the use of the Fitzpatrick well are wholly without the contemplation of subdivision 10 and are independent covenants collateral to the other purposes of the lease.

This case is precisely analogous to that of *Burnes v. McCubbin*, 3 Kan. 221, where it was said :

"It was stipulated in the lease that the lessee should forfeit the term : 1st, if the lessee failed to pay the rent when due ; and 2d, if the lessee failed to pay taxes and assessments levied upon the property, or to refund the amount of the same to the lessors in case they should pay them.

"After this agreement concerning forfeiture of the term, and not connected therewith, there is the further stipulation that the lessee should not assign the lease without the written consent of the lessors.   No penalty is expressly provided in case of a breach of this part of the lease, and unless the penalty of forfeiture is held to extend to it by implication, there could have been no intention on the part of the contracting parties to provide one, but to leave the parties to determine their

rights in this respect under the law applicable to such cases.

"We are not disposed to favor this doctrine of implication, and more especially when applied to those cases where parties have entered into written contracts with express conditions. The rule is that 'when parties have entered into written engagements with expressed stipulations, it is manifestly not desirable to extend them by implication; the presumption is, that having expressed *some* they have expressed *all* the conditions by which they intend to be bound under that instrument.

"We think that a fair construction of the terms of the contract in this case justified the court below in holding that the parties thereto did not provide a forfeiture of the lease in case the lessee should assign it without consent of the lessors. The authorities sustaining this view are very numerous.

In *Ritchie v. K. N. & D. Rly. Co.*, 55 Kan. 36, 57, 39 Pac. 718, 724, it was said:

"While the law enforces the lawful contracts of parties, and even gives effect to forfeitures, equity gives relief against the hardships incident to such forfeitures in very many cases. It is a universal rule that the instrument creating the forfeiture will be strictly construed, and that its terms will never be extended by construction."

In construing a mining lease the New Jersey court of chancery laid down the following propositions, which are without doubt the law:

"On construing a deed, the question is, not what did the grantor intend to do, but what has he done by apt and proper words?"

"To create a good condition upon which a term granted by a lease shall end before it expires by lapse of time, a right to reenter, on breach, must be expressly reserved.

"A breach of the covenants of a lease, in the absence of a stipulation to that effect, does not work a forfeiture of the term.

"Where a term is demised in clear and apt words, it can only be defeated by words as strong and express as those by which it is created." ( *Vanatta v. Brewer*, 32 N. J. Eq. 268.)

Likewise the supreme court of Pennsylvania, referring to the provisions of an oil lease, said:

"But there was no clause of forfeiture in the lease, and forty dollars per annum was fixed as the price of delay. McClelland could not have recovered in ejectment, therefore, because, by the terms of the lease, it was money, not the possesssion of the tenants, which delay in completing the well entitled him to demand.

"The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved; that the proof of the happening of the event on which the right is to be exercised must be clear; that the party entitled to do so must exercise his right promptly; and that the result of enforcing the forfeiture must not be unconscionable." ( *Thompson v. Christie*, 138 Pa. St. 230, 248, 249, 20 Atl. 934, 935, 11 L. R. A. 236.)

Whatever may be the tendency of some courts at times to favor the lessor in construing certain contracts supposedly unique in character because of the peculiarity of the subject involved, there is nothing in the contract under consideration, or in the particular provision of it under discussion, to exempt it from the operation of the general rules announced.

Under the first subdivision of the lease two courses were open to the lessee—one to drill a well within one year, the other to pay forty dollars annually, after the expiration of one year, until a well should be drilled. The latter alternative, however, was limited by clause 9, terminating the lease at the end of five years, if no well were drilled within that time. The lease does not in terms or by implication require the immediate sinking of a well. If that were the purpose of the parties the English language furnished abundant

means to express it. The provisions for forfeiture are equally plain. If the lessee should fail for one year to drill a well, and thereafter should also fail to pay forty dollars annually until a well should be drilled, the lease was forfeitable ; and if no well were drilled in five years the lease was forfeited altogether. This is the indisputable import of the writing adopted by the parties as the expression of their will. Therefore, under the conceded facts appearing on the record no right of forfeiture was disclosed. The finding of the trial court on the disputed evidence is, of course, conclusive.

The extended argument of counsel for plaintiffs in error upon the abstract subject of oil and gas leases and upon certain questions of policy arising from the rapid development of extensive oil- and gas-fields in this state is of no assistance in arriving at an understanding of the rights of the parties to this suit under the specific agreement they have made. The courts have no right to declare that, whatever the parties may think, operations for sinking a well must begin at once under an oil or gas lease. If this court had done so prior to the time plaintiffs desired to contract they would have rebelled, without any doubt, with the utmost indignation against the decision as an infringement of their liberty to contract with reference to their land and the minerals beneath its surface as they pleased. In so doing they would have been justified. If plaintiffs should desire to contract for an immediate exploration, they must have that right; and if they should desire to give an oil or gas company five years in which to sink a well, upon a consideration satisfactory to themselves, and as the result of negotiations free from imposition and fraud, they must have that right. But having deliberately made a con-

tract of the latter description, they have no right to call upon a court to declare that it is of the other kind merely because generally it might seem to be better for farmers not to encumber their lands with mineral leases giving a long time for exploration, or because generally such leases do contemplate that forfeiture shall follow a failure to explore at once. ,

No facts were pleaded warranting a reformation of the contract over which this controversy arises, and the district court rightfully refused to impose upon it a meaning contrary to its terms.

The judgment of the district court is affirmed.

All the Justices concurring.