.A. B. RHODES v. THE MOUND CITY GAS, COAL AND OIL
COMPANY *et al.*

No. 16,168.

SYLLABUS BY THE COURT.

1. MINERAL LEASES—*Assignment—Description of Land Covered by Leases.* An assignment of mineral leases covering real estate "immediately surrounding" Mound City, Kan., was properly interpreted by the district court to include a lease of land situated a half mile distant from the town site.

2. ——— *Covenant to Drill Well or Make Annual Payments— Time of Payment.* In the absence of terms indicating a con-

trary intention a covenant in a gas-and-oil lease to drill a well on the leased premises within two years or thereafter to pay $80 annually until a well is drilled does not require the annual payments to be made in advance, and the covenant is performed by a single payment of the entire sum at any time before the end of the year for which it is made.

Error from Linn district court; WALTER L. SIMONS, judge. Opinion filed October 9, 1909. Affirmed. Opinion denying a petition for a rehearing filed November 10, 1909.

*James D. Snoddy*, for the plaintiff in error.

*James W. Reid*, and *John J. Jones*, for the defendants in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff brought suit to restrain the defendants from interfering with his possession, use and enjoyment of a gas-well to which he claimed the paramount right. The court found the facts and determined the law in favor of the defendants, and the plaintiff prosecutes error.

The title of the defendants rests upon a mineral lease given by the owner of the land on which the well is situated, Henry Carbon, to one Robert Fleming, on June 18, 1902. The defendants claim this lease was duly assigned to them and is still in force, unforfeited. If this be true the judgment of the district court is correct. The claimed assignment was effected, if at all, by a written instrument dated October 15, 1903, in which Fleming assigned and transferred interests described as follows:

"All my right, title, claim and interest in and to one certain franchise granted to the undersigned on the 3d day of March, 1902, by the city of Mound City, Kan., and being Ordinances Nos. 153 and 154 of said city, and all the gas-pipes and gas-mains and fixtures not hereinafter reserved, and all my right, title, claim and interest in and to all the oil, gas, coal and other mineral

leases of all kinds and descriptions belonging to said undersigned owner, or which was taken in undersigned's name, and which said leases and franchises cover real estate situated in and immediately surrounding said Mound City, Kan., and this conveyance is intended to cover and convey all the said leases and franchises of the undersigned owner or which may hereafter be taken in my name."

The Carbon land is a half mile distant from Mound City, and the plaintiff argues that the terms of the assignment exclude it because the word "immediately" forbids the existence of intervening space. This interpretation involves more of purism than the discursive phraseology of the context seems to require. Like many other absolute expressions the one under discussion is popularly used with less strictness than the literal signification requires (Cent. Dic.; 21 Cyc. 1733), and a fair consideration of the entire instrument leads to the conclusion that the parties intended the assignment to embrace leases of land lying close about Mound City, although not in actual contact with the town site. If a suspicion of ambiguity in the terms of the writing be admitted it vanishes in the light of the situation, relations and purposes of the parties, and particularly in the light of the evidence showing their subsequent conduct with reference to the Carbon lease itself. This evidence need not be recounted here. The district court was clearly justified in holding that an assignment was made as the defendants claim.

The lease granted and conveyed all the coal, oil and gas in and under the premises described, together with the right to enter, drill and operate for and remove the substances named, on the following, among other, conditions:

"(1) Second party agrees to drill a well upon said premises within two years from this date or thereafter pay to first party eighty ($80) dollars annually until said well is drilled, or this lease shall be void.

"(3) Should gas be found, second party agrees to

pay to first party fifty dollars annually for every well from which gas is used off the premises.

"(8) A deposit to the credit of the lessor in Farmers' and Merchants' Bank, Mound City, Kan., to the account of any of the money payments herein provided for, shall be a payment under the terms of this lease.

"(9) If no well shall be drilled upon said premises within ten years from this date, second party agrees to reconvey, and thereupon this instrument shall be null and void."

No well has yet been drilled. On April 24, 1905, a tender of $80 was made to the lessor according to the terms of the first condition of the lease, and was refused. On June 16, 1905, less than three years from the date of the lease, the sum of $80 was deposited to the credit of the lessor in the Farmers' and Merchants' Bank of Mound City, according to the terms of the eighth condition. The plaintiff contends that if no well were drilled the lease became void at the end of two years, unless $80 were paid in advance to keep it alive for another year.

The lease in question is identical in legal effect with the one considered in *Rose v. Lanyon*, 68 Kan. 126. Diligence in sinking a well was not a vital feature of the contract. The lessee might drill a well at any time within two years, or he might suffer two years to lapse without doing anything and then thereafter pay $80 annually until he saw fit to drill a well, the latter alternative being limited by the ninth condition terminating the lease absolutely at the end of ten years if no well should then be in existence. The annual payment of $80 is the stipulated price of the privilege to delay drilling a well and supposedly is an equivalent for the benefits the lessor would receive if a well were in operation. The first condition belongs to the same class as the third, in which the lessee agrees to pay $50 annually for each well from which gas is used should wells be drilled, and both conditions are on the same legal footing as provision for the payment of

annual sums or for annual performance in other kinds of contracts. The rule governing such agreements is stated in *Mower v. Sanford,* 76 Conn. 504, as follows:

"An agreement to pay a fixed sum annually, or each year, in the absence of language modifying the ordinary meaning of these terms, can not fairly be construed as a promise to pay such sum annually in advance, or at the commencement of each year. A contract for the payment of money in fixed instalments, containing no other provision for the time of payment of such instalments than that they are to be paid annually, is lawfully performed by the payment of a single instalment at the end of each year." (Page 506.)

In the case of *Curtiss v. Howell,* 39 N. Y. 211, the opinion reads:

"The undertaking of the plaintiff was to deliver one thousand tons of ground bark per year for the term of five years, to commence on the first day of September next. Had this undertaking been to pay a thousand dollars per year for the term of five years no one would have questioned the right of the promisor to the whole year in which to make the payment. The words 'per year' are equivalent to the word 'annually,' and, to my mind, convey the same idea. It is true that the word 'per' may be understood as during, but, had the latter word been used, the meaning would have been the same. The promise would have been performed by a delivery at any time before the expiration of the year." (Page 213.)

The rule was applied to a mineral lease much like the one now under consideration in the case of *Blodgett v. Lanyon Zinc Co.,* 120 Fed. 893, the syllabus of which reads as follows:

"In a lease for ten years, with a stipulation that in case no well was sunk within two years it should become void unless the lessee should elect from year to year to continue it by paying $40 each year, it is not essential that the $40 should be paid before the commencement of the year, but the payment may be made at any time during the year."

In the opinion it was said:

"The second ground upon which the bill to avoid this

lease was founded is that the Lanyon Zinc Company did not pay the $40 rental for the year from April 10, 1899, to April 10, 1900, until December 23, 1899. The lease grants the right of use of the land for ten years, and then provides that if a well is not sunk on the premises within two years from the date of the lease it shall become void, 'unless the second party shall elect from year to year to continue this lease by paying or depositing to the credit of the first party each year $40 at the Bank of Allen County, Kansas, until a well is complete on these premises.' No well has been sunk. Counsel for the appellants insist that this lease became null and void on April 10, 1899, because the $40 for the succeeding year was not paid on or before that day. They insist that this lease simply gave to the lessee the option to elect to continue it from year to year by paying the rental for the succeeding year before it commenced. But is this a fair construction of the agreement? It first grants the exclusive right for ten years from April 10, 1894, and then provides that if a well is not sunk within two years from its date the lease shall become void, unless the lessee shall elect to continue it from year to year by paying $40 each year. This is not a mere grant of an option. It is a grant of the right to the use of the premises for the term of ten years, conditioned on the payment of $40 per year after the expiration of the first two years. Nor is there any provision in this contract that this rental shall be paid on or before the commencement of the year to which it applies. An election from year to year, by paying $40 each year, literally means an election by paying during each year, and there is nothing elsewhere in the contract inconsistent with the words and the ordinary meaning of this provision." (Page 898.)

Such being the law, the lease in this case was continued in force by the tender and deposit recited.

From what has been said it follows that the disputed assignment was properly received in evidence. It is immaterial that the cross-examination assigned as error went beyond the scope of the direct examination. The trial was before the court, the evidence had an important bearing upon the controversy, and the plaintiff was not injured because the usual order was varied.

Rhodes v. Oil Co.

The defendants were entitled to the property on which the well is located. Therefore the plaintiff was an intruder, and it makes no difference what the arrangements were under which the well was drilled or in what capacity the party who made them acted. Since the lease is sufficient to sustain the title of the defendants it is not necessary to discuss the errors assigned repecting their proof of title by deed.

The judgment of the district court is affirmed.

OPINION DENYING A PETITION FOR A REHEARING.

*Per Curiam:* A petition has been filed asking for a rehearing in this case. The first ground of complaint is that the land in the Carbon lease is situated more than a half mile from the city of Mound City, and such is indeed the fact. The distance is the diagonal of a quarter-section of land. Of course it would not affect the principle involved or the decision of the case if the distance were a mile and a half, but to satisfy the demand of the plaintiff for accuracy the syllabus and opinion may be regarded as modified by substituting the words of the plaintiff's brief—"more than one-half mile"—for the expression "a half mile," wherever the latter is used.

The claimed question of the sufficiency of the description of the leases in the assignment was not overlooked upon the first consideration of the case, but was not deemed of sufficient moment to require the publication of a formal opinion respecting it.

The argument for the defendant's interpretation of the lease is no more cogent than those heretofore advanced in his briefs. Nothing else in the petition requires comment, and it is denied.