No. 19,132.

TRUE W. SMITH and A. A. SMITH, *Appellees,* v. A. J. STEELE et al., *Appellants.*

### SYLLABUS BY THE COURT.

OIL-AND-GAS LEASE—*Delay in Commencing Development—Default of Lessees—Lease Not Forfeited.* An oil-and-gas lease contained a clause, "in case no well shall be commenced . . . within ninety days . . . this lease shall become null and void . . . unless the lessee shall pay for the delay at the rate of fifty cents per day . . . until a well shall be commenced." No well was commenced and one hundred and one days after default the landlord accepted payment for the delay. On a later default for the same length of time, the landlord commenced suit to cancel the lease. Four days thereafter the tenants tendered a sum of money sufficient to pay for the defaulted time and sufficient to extend the time for several months in advance: *Held,* That the cancellation of the lease was unjust under the circumstances; that the words "fifty cents a day" fixed the rate and not the times of payment; and that payments at reasonable times for the default of the tenants were sufficient to preserve the lease.

Appeal from Chautauqua district court; ALLISON T. AYRES, judge. Opinion filed July 10, 1915. Reversed.

*George Campbell,* of Coffeyville, and *J. W. Mertz,* of Sedan, for the appellants.

*C. W. Spencer,* of Sedan, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to cancel an oil-and-gas lease on three hundred and sixty acres of land in Chautauqua county. The tenants leased the land for five years and agreed that "in case no well shall be commenced . . . within ninety days . . . this lease shall become null and void . . . unless the lessee shall pay for the delay at the rate of fifty cents

Smith v. Steele.

per day  .  .  .  until a well shall be commenced." The ninety days expired August 30, 1912. No well was commenced. On December 9, 1912, the tenants paid $65, being fifty cents a day from August 30, 1912, to January 5, 1913; and January 7, 1913, they paid $45 which extended the lease until April 7, 1913. In January, 1913, the tenants were notified that the landlord would not accept any more money. On July 17, 1913, an action was brought to cancel the lease. Four days later, July 21, 1913, the tenants tendered $150 to the bank which had been authorized to receive the payments but which long before this time had been directed not to receive any more money on this lease, and the bank would not accept the money, so the tenants procured a certificate of deposit in that bank payable to the owner of the land. Obviously this intimation was given because the landlord wanted a well and not payment for continued default.

The court gave judgment canceling the lease. The appellants rely principally upon *Rose v. Lanyon,* 68 Kan. 126, 74 Pac. 625, and *Rhodes v. Oil Co.,* 80 Kan. 762, 104 Pac. 851. These cases hold, in effect, that a forfeiture could not be taken so long as the payments were made annually and the leases in those cases warrant that interpretation. In the case at bar nothing was said as to when the payments should be made. The stipulation was to pay fifty cents a day. The appellees contend that this means that it should be paid from day to day, and that the contract does not contemplate the extension of credit. We think it is sufficient if the payments are made at reasonable times. The words "fifty cents a day" fix the rate and not the times of payment. An actual payment of fifty cents, day by day, would be a vexatious inconvenience to both parties and could hardly have been within the contemplated terms of the contract. Looking at the matter in a broad and impartial way, we think that quarterly payments would be reasonable. In this case, the first payment was made on December 9, 1912, which was one hundred and one days after the expiration of the time when the well was to be commenced, and this period, one hundred and one days, was acquiesced in by the landlord as a reasonable time for payment. This in effect fixed one hundred and one days as a reasonable time as construed by the parties themselves. The second payment ex-

tended the time until April 7, 1913, and suit was filed on July 17, 1913, when payments were again overdue one hundred and one days. Payment was tendered four days later, or one hundred and five days after the expiration of the second payment. Under these circumstances, the cancellation of the lease was unjust and the judgment of the district court is reversed and remanded with instructions to enter judgment for the defendants.

DAWSON, J. (dissenting) : I can not concur in the foregoing. I concede that the words "fifty cents a day" only fix the rate and not the times of payment, and I concede that it would be sufficient if the defendants had paid at reasonable intervals; but I can not read into this contract any provision for credit. Since the defendants made default in commencing the well they should have paid reasonable sums thereafter in advance for limited periods, and each period should be about the same duration as upon reasonable expectation they might hope to commence operations in putting down a well. The major consideration for this contract was the procuring of an oil or gas well. Under the majority decision this is largely ignored. Nor do I think that the fact that the landlord accepted the first payment one hundred and one days after default in commencing the well should govern in later defaults. The landlord might well say, "I'll overlook your shortcoming in this instance, but I won't stand this again." And that is in effect what he did. In the second period the default was only for two days and this was cured by a payment for a considerable period in advance, during which time he might reasonably expect the defendants to comply with their contract and put down a well. At the end of the second period and with the continuing default of the tenants, the landlord was fully justified in proceeding to cancel the lease and in looking elsewhere for a tenant who would develop his property.