BRUNSON et al. v. CARTER OIL CO.

(District Court, E. D. Oklahoma. November 15, 1919.)

No. 2539.

MINES AND MINERALS ☞58, 79(6)—EXPLORATION OIL LEASE HELD VALID, AND NOT SUBJECT TO FORFEITURE.

An exploration and development "unless lease" for oil and gas, for which lessee paid a substantial bonus, with privilege of renewal by payment of a substantial sum annually, *held* a valid mutual contract based on a valuable consideration, and not subject to forfeiture because of failure to make an annual payment in time to a grantee of lessor, where it was in fact made before due, but through mistake of a clerk in failing to make proper entry of transfer of title on the records of lessee the payment was sent to lessor, instead of his assignees.

In Equity. Suit by E. L. Brunson and others against the Carter Oil Company. Decree for defendant.

See, also, 259 Fed. 656.

Bond, Melton & Melton, of Chickasha, Okl., and H. B. Lockett, of Comanche, Okl., for plaintiffs.

Jas. A. Veasey and C. M. Oakes, both of Tulsa, Okl., for defendant.

WILLIAMS, District Judge. The facts as stipulated are in effect the same as set up in defendant's answer. The motion to strike this answer has heretofore been overruled. See written opinion heretofore filed. (D. C.) 259 Fed. 656. The lease here under consideration was executed by the lessors for a bonus consideration of $540 cash in hand paid to the lessors by the lessee. The rental of $90, to be paid May 19, 1918, should have been paid plaintiffs, rather than their grantors, A. C. Flowers and wife, as plaintiffs had, after the payment which was due on May 19, 1917, had been paid by defendant prior to May 7, 1917, mailed on said date to the defendant an abstract of title and the original deed to them from his said grantors, and on May 9, 1917, through its clerk in the title and lease department, defendant wrote the plaintiffs as follows:

"We are returning herewith your deed to the Flowers land in section 23— 2S—5W, also your abstract, and wish to advise that proper notice has been made on our lease and rental ledgers to show as [to] the owner of this acreage and entitled to any payments falling due on same. As to the $90.00 which we have paid to A. C. Flowers, and which amount was due on this acreage as

rental on the 19th inst., wish to say that we are to-day writing Mr. Flowers, asking him to authorize the bank at Duncan to return to us this amount, and if same is done we will issue check to you in this amount; however, if Mr. Flowers will not do this, we do not feel that we are obliged to take any further steps in the matter, and will expect you to settle same with him."

Defendant tendered into court, for plaintiff, $90 with legal interest thereon from May 19, 1918, and the further sum of $90, with legal interest thereon from the 19th day of May, 1919, and as rental due under said lease on or about May 19, 1919. The lease provides that:

"All rentals due hereunder shall be paid by lessee's check, mailed, postage prepaid, to lessor at Duncan, Okl., or to First Nat. Bank of Duncan, Okl., for lessor's credit on or before the date any such rental shall become payable. Said bank, by a power irrevocable, is hereby made the agent of lessor to accept all rentals paid hereunder, and the same shall continue as the depository of such rentals during the life of this lease regardless of changes in the ownership of said land or said rentals. No change in the ownership of said land, or the rentals or royalties due hereunder, shall effect or bind the lessee until such purchaser shall have furnished the lessee an abstract of title to such lands, certified to date, showing as a part thereof the title claimed by such purchaser. * * *"

The check or draft sent to the First National Bank of Duncan contained the following clause, to wit:

"Being payment in full for rental from May 19, 1918, to May 19, 1919, as per terms of lease covering lands described as follows: N2 NE4 SE4 & SW4 NE4 SE4 & NW4 SE4 & N2 SW4 SE4 23—2S—5W."

If the lessee desired for said lease to continue in force after the period for rental payment, it was its duty to cause said payment to be made in accordance with the requirements of said lease. Defendant did not neglect such duty. On the contrary, it attempted to make said payment many days before it was required to be paid. In the letter written by the clerk of the title and lease department on May 9, 1917, he stated that—

"Proper notation has been made on our lease and rental ledgers to show as [to] the owner of this acreage and entitled to any payments falling due on same."

Obviously, when that letter was written, the clerk of the rental and lease department thought he had made such notation. It may be that he had acted and made the notation, but by mistake placed it on the wrong sheet, or that he thought he had made such notation when in fact he had not made it. The statute (section 908, Rev. Laws 1910) defines a mistake of fact as a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in (1) an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract, or (2) belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed. If he had not made the notation, but, thinking that he had, made the statement, that constituted a mistake.

The defendant had an approved system for keeping its books and accounts and competent clerical help. The conclusion is inevitable that there was no negligence in this transaction, but that this defendant did

exercise due care. The admitted facts show that other large oil companies employ a similar system of bookkeeping and accounting. In addition to the authorities cited in the former opinion filed by me in this case, the case of Pyle v. Henderson, 65 W. Va. 39, 63 S. E. 762, has been brought to my attention. An "unless lease" was there under consideration, and equity granted relief. In the opinion it is said:

"It would seem to me that a lease of this character, the lessor receiving valuable consideration for the privilege of exploration for oil, would confer a valid right of exploration for the time and on the terms spoken of in it. Such would seem to be the intent of the parties and the justice of the matter, notwithstanding the contract imposed no obligation on the lessee to drill or pay. The lessor has been paid his price for giving such privilege. It seems that this was the construction of the Eclipse Case [47 W. Va. 84, 34 S. E. 923] in the opinion by Judge McWhorter in Harness v. Eastern Oil Co., 49 W. Va. on page 250, 38 S. E. 670. Denying the aptness in that case * * * he said: 'In that case the lessee had paid nothing; had done nothing.' In Lowther Co. v. Cuffey, 52 W. Va. 88, 43 S. E. 101, Judge Dent, who prepared the opinion in the Eclipse Case, differed the two cases because of $1 paid as a bonus. That lease imposed no obligation on the lessee. In Tibbs v. Zirkle, 55 W. Va. 49, 46 S. E. 701, 104 Am. St. Rep. 977 [2 Ann. Cas. 421], a point held is: 'An option given for a valuable consideration cannot be revoked until the time limit thereon has expired. If such option is without consideration, it may be withdrawn or revoked at any time before acceptance.' So we cannot say that from mere want of mutuality Bunfill could ignore the first lease."

In West Virginia the same distinction is made between an "or lease" and an "unless lease" as is recognized by the Supreme Court of Oklahoma in Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, and Kolachny v. Galbreath et al., 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451. See Eastern Oil Co. v. Coulehan, 65 W. Va. 531, 64 S. E. 836, and authorities therein cited. In Bloom v. Rugh, 98 Kan. 589, 160 Pac. 1135, the court said:

"Counsel for plaintiffs say: 'The appellants' lease is what is termed among the oil and gas fraternity an "unless lease," in contradistinction to what is termed an "or lease." ' A nice distinction is sought to be made between the case at bar and that of Rhodes v. Oil Co., 80 Kan. 762, 104 Pac. 851, which was an 'or lease' contract. The cases decided by this court have not attached any importance to such subtleties of language, but have been determined upon their individual and substantial merits; and the later drift of the decisions show a decided tendency to frown on forfeitures where the rights of the parties insisting thereon can otherwise be adequately protected."

In Kays et ux. v. Little et al., 103 Kan. 461, 175 Pac. 149, 1 A. L. R. 675, an "unless lease" being under consideration, the court said:

"The plaintiff attempted to enforce the forfeiture of Foster's rights under the lease, although Foster was diligent in doing what the lease required that he should do. He manifested no intention to abandon his rights under the lease, not even by neglecting to make any effort to pay the rental required until after the time fixed for that payment. He attempted to make those payments before the stipulated time. It was not through any act of his that the payment did not reach the plaintiff in ample time. Under the circumstances, it would have been inequitable to have granted the plaintiff the relief he asked. The court decreed that Foster had a 'good, valid, and subsisting oil and gas lease' on the property in question, and rendered judgment against the plaintiff for costs. The judgment rendered was justified by the facts, and is affirmed."

In Monihon v. Wakelin, 6 Ariz. 225, 56 Pac. 735, there was involved an option for renewal of a lease on a store building; the facts being as follows:

"That on October 28, 1897, more than six months before the expiration of said lease, plaintiff had elected and determined to exercise his option to renew said lease, and had then determined and intended to give the defendant notice in writing of such intention and determination six months prior to the expiration of the term of said lease, but because of an accident that happened to plaintiff without his fault, and which he could not prevent, the plaintiff was so injured as to render him physically and mentally incapacitated from giving such notice at any time between the said 28th day of October, 1897, and on the 22d day of November, 1897, the plaintiff did give the defendant written notice of his election and determination to demand renewal of said lease for the term of five years from its expiration; and the court further finds that at the time said notice was given, on November 22, 1897, the defendant, J. D. Monihon, had made no contract for the letting of said premises to any other person, and was in the same position respecting said premises, and the use of and leasing thereof, as on November 1, 1897."

In the opinion it is said:

"An option to purchase, or to renew a lease, standing alone, unsupported by any consideration which has passed, both in law and equity is regarded differently from a covenant to convey, or to renew a lease forming an integral part of a contract or lease, containing several distinct covenants, and founded upon an adequate consideration. The latter is treated as more than a mere privilege, and as having all of the elements of a mutual contract. Hall v. Center, 40 Cal. 63; Souffrain v. McDonald, 27 Ind. 269; House v. Jackson, 24 Or. 89, 32 Pac. 1027. Such covenant to convey or to renew a lease, unless it be otherwise declared in the instrument itself, is properly held to constitute a substantial part of the whole contract, because it might well be considered as a material inducement which led to its execution. In the case at bar this is illustrated by the testimony of Wakelin. In effect, he testified that, had no covenant to renew been inserted in the written lease, he would not have agreed to it, for the reason that the premises at the time had a prospective value as a place of business greater than it then possessed, and he therefore agreed to pay the stipulated rent for the term, because of the privilege of leasing the premises for a further term when the premises, through the growth of the town and the extension of trade, should be made more valuable to him as a business stand. We view the covenant to renew in the lease as a mutual contract, founded upon an adequate consideration, and will therefore give attention to the law applicable to contracts of renewal, rather than to mere options to renew."

In the case at bar, the oil and gas mining lease was executed on May 19, 1916, for a recited consideration of "$1 * * * in hand paid by the lessee and other valuable consideration." It is stipulated that the defendant, at the time of the execution and delivery of such lease as aforesaid, paid A. C. Flowers and Cordia Flowers, his wife, the sum of $540 in cash as bonus for said lease.

In Monihon v. Wakelin, the contention being that the option, standing alone, was unsupported by any consideration which had passed, it was held that Wakelin, the lessee, having "agreed to pay the stipulated rent for the term, because of the privilege of leasing the premises for a further term when the premises, through the growth of the town and the extension of trade, should be made more valuable to him as a business stand," and the court viewed the covenant in the lease to renew as a mutual contract founded upon an adequate consideration and pro-

ceeded to give attention to the law applicable to contracts of renewal rather than mere options to renew.

In Shaffer v. Marks (D. C.) 241 Fed. 155, Judge Campbell, in referring to Witherspoon v. Staley (Tex. Civ. App.) 156 S. W. 557, which involved an "unless lease," said:

"In this case deposit of the rental due as stipulated in the lease was made two days late. It does not appear that an attempt was made to deposit on time which was prevented by accident or mistake."

In Monihon v. Wakelin, supra, time being of the essence of the contract, the provision or option for a renewal of the lease was held to be a substantial part of the contract because it might well be considered as a material inducement for its execution. The lessee had been in possession for a period and had paid a substantial monthly rental. In the instant case, the lease being for prospecting or exploring for oil or gas, with a provision for the payment of a fixed annual rental, as delay or lieu money, a substantial bonus having been paid at the time of its execution, the taking of possession of the premises by the lessee had not become essential. The defendant having a substantial vested property right ad personam in this lease, did not the provision for an extension "constitute a substantial part of the whole" lease "because it might well be considered as a material inducement for its execution"? As to such vested property right, whether in rem or ad personam, the Kansas court refused to make nice distinctions in determining as to whether it would grant relief against a forfeiture or failure of said right. In West Virginia nice distinctions are made, but still the relief is granted where a valuable consideration passed for the privilege which constituted a vested property right ad personam. In Shaffer v. Marks the court was not concerned about nice distinctions as to the character of the property right, but only as to whether a vested property right was being forfeited or lost, for which equity should afford a remedy. By a continuance of the payments of the rentals defendant may pursue the exploration for oil and gas, a right for which it has not only contracted for but also for which it paid a bonus of $540. Without the neglect of any legal duty, having exercised due care relative to said transaction and having long prior to May 19, 1918, elected and determined to pay said rental due on said date and having shown itself "ready, desirous, prompt and eager," and acted within the fixed option time; but, said payment not having reached the plaintiffs within such time limit on account of such mistake, plaintiff is not entitled to have said lease canceled, but defendant may retain same as now existing and in force.

A decree will accordingly be entered.