No. 22,732.

G. D. WATERS and LAURA WATERS, *Appellees*, v. J. M. HAT-
FIELD and H. M. HATFIELD, Partners, etc., *Appellants*.

### SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Terms of Lease Relative to Forfeiture Con-
strued.* An oil and gas lease for the term of one year "and so long
thereafter as gas or oil is produced," containing a provision by which
the lessees agreed to complete a well on the premises within sixty
days from the date of the lease, or in case of a failure to complete a
well within that time, to pay to the lessors fifteen dollars "in advance
for each additional month such completion is unavoidably delayed,"
is construed to mean that a well should be completed within sixty
days, except that its completion might be deferred by some unavoid-
able delay.

2. SAME—*Breach of Terms of Lease—Lease Set Aside.* In an action to
cancel such lease, a finding supported by sufficient evidence that no
well had been commenced or completed within the sixty-day period,
and that the failure was not the result of any unavoidable delays,
entitled plaintiffs to a decree setting aside the lease.

Appeal from Montgomery district court; JOSEPH W. HOL-
DREN, judge. Opinion filed June 5, 1920. Affirmed.

*O. L. O'Brien,* and *W. N. Banks,* both of Independence, for
the appellants.

*Charles D. Shukers,* and *Chester Stevens,* both of Inde-
pendence, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action was one to cancel an oil and gas
lease, in which the plaintiffs prevailed, and the defendants
appeal.

Except for a single word in one clause the instrument was
an ordinary oil and gas lease for the term of one year, "and so
long thereafter as gas or oil is produced or operations are con-
tinued," etc. The stated consideration was the payment in
cash of $520 and "the covenants and agreements hereinafter
contained on the part of the parties of the second part, to be
paid, kept and performed." The lessors were to receive a
royalty of one-eighth of all the oil produced and saved from

the premises; and gas was to be piped to within fifty feet of their residence on the premises for their domestic use, free of charge.

The controversy turns over the effect to be given to a clause by which the lessees agreed, "to complete a well on said premises within sixty (60) days from the date hereof, or in case of a failure to complete a well within the time above specified, to pay to the first parties fifteen dollars ($15) in advance for each additional month such completion is *unavoidably* delayed from the time above mentioned for the completion of such well, until the well is completed or this contract is surrendered, as is hereinafter provided; such payment for delays shall be made by check mailed to credit of parties of first part or deposited to their credit in" a certain bank at Elk City.

Plaintiffs' evidence showed that the land embraced in the lease lies within an extensive gas field, and that at the time of the trial there was one well within 300 feet of plaintiffs' land with a daily capacity of 23,000,000 cubic feet of gas, and within a quarter of a mile was another well with a daily capacity of 20,000,000 cubic feet. There was evidence that the defendants had a drilling rig of their own within four miles of the land at the time the lease was delivered, and that no effort was made by them to move a drilling rig onto plaintiffs' land, and that no well had been commenced or completed. The trial court found that the defendants made no effort to develop the land within sixty days from the 10th day of August, 1918, the date the lease was executed, and that this failure was not the result of any unavoidable delays; and that on October 12 plaintiffs caused a written notice to be served upon defendants declaring that the lease was void for the defendants' failure to keep and perform the conditions and covenants of the lease.

As conclusions of law the court held that the lease provided by its terms that a well should be completed within sixty days, except that its completion might be deferred by some unavoidable delay, and that by reason of the omission and neglect of the defendants to keep and perform this covenant they had forfeited their rights, and judgment was entered canceling and setting aside the lease.

Whether, as plaintiffs contend, the $520 cash payment was what is commonly known in the oil fields as a bonus paid the landowner to induce him to give the lease and was not intended as rental, nor to defer drilling nor to cover any neglect or omission on the part of the lessees, it is plain that part of the consideration was expressly stated to be the performance by the lessees of the covenants and promises contained in the instrument itself.

It is argued by the defendants that, inasmuch as forfeitures are not favored in law, and are despised in equity, it should be held that the clear grant, giving to defendants the rights as lessees for a period of one year, and as much longer as oil or gas might be found in paying quantities, cannot be cut down by implication or by ambiguous expressions. Authorities are cited to the effect that where a term is demised in clear and apt words it can only be defeated by words as strong and express as those by which it is created. (*Rose v. Lanyon*, 68 Kan. 126, 74 Pac. 625.) It is insisted that the clause upon which the plaintiffs rely does not, by any clear, express language, cut down the one-year period granted by the preceding clause; that if the word "unavoidably" had not been written in the lease, we would have the ordinary oil and gas lease, and by the payment of $15 monthly rental in advance the lessees could postpone drilling if they desired, and still hold the lease for the full period of one year. It is urged that the inquiry for the court is, not what either of the parties necessarily intended the lease to mean, but what does it, in fact, mean? The defendants say:

"It means that the lessees agreed to complete a well . . . within sixty (60) days . . . or . . . in case of a failure to complete a well within the time above specified, . . . they would pay to the lessors for each month they were *unavoidably* delayed the sum of fifteen ($15.00) dollars. *It means just that and nothing more.* It does not mean that in case there should be no unavoidable delay . . . there should be no delay at all. That is what plaintiffs want to construe it to mean. Their idea doubtless is that the parties would not be foolish enough to allow a delay without any particular reason and not require a rental, and require it only when the delay was unavoidable, and still allow the lease to remain in force."

Defendants' argument is that there was no absolute agreement on their part to drill a well within sixty days; that the

Waters v. Hatfield.

lease does not say, nor mean, that. It is insisted that the lease was granted for one year; the only limitation being that the lessees should complete a well within the sixty days, or pay a certain rental for such time as they were unavoidably delayed; and attention is called to the fact that the trial court made a finding that defendants were not unavoidably prevented from commencing and completing a well within sixty days. It is therefore argued that in order to cut down the one-year period, expressly granted by the lease, it is necessary for the court to read into the sixty-day clause a provision that there could be no delay except where it was unavoidable.

The defendants' construction of the lease, followed to its logical conclusion, would render the provision for completing a well within sixty days of no effect. By mere proof that they had determined to make no effort to drill a well within sixty days, and that their failure was not caused by unavoidable delay, the lessees could keep the lease in force for one year without the payment of the $15 per month. The agreement to complete a well within sixty days would not be binding because of the alternative provision, "or in case of a failure to complete a well within the time above specified, to pay" $15 for each additional month completion is unavoidably delayed.

We cannot agree with defendants' contention that it is not the duty of the courts to determine what the parties to the contract intended. In any contract where the parties disagree as to the meaning of its terms, the question to be determined is: What must the parties be held to have intended by the terms used? The provision requiring completion of a well within sixty days was express, and not implied, and in our opinion it cannot be ignored. The defendants were not unavoidably delayed, so that we may disregard entirely the provision requiring them to pay $15 a month; but what becomes of their express agreement to complete a well within sixty days in case they were not unavoidably delayed? It was an express covenant that formed part of the consideration for the granting of the lease; its violation warranted the judgment canceling the lease, and it follows that the judgment must be affirmed.