No. 25,086.

P. T. FOLEY, *Appellee*, v. JOHN SCHMIDT and WESTERN GAS AND PIPE LINE CORPORATION, *Appellants*.

SYLLABUS BY THE COURT.

SPECIFIC PERFORMANCE—*Contract for Purchase of Gas and Mineral Lease—Assignments of Error Not Well Founded.* Various assignments of error in an action to enforce specific performance of a contract for the purchase of a gas and mineral lease are held not to be well founded.

Appeal from Labette district court. ELMER C. CLARK, judge. Opinion filed March 8, 1924. Affirmed.

*C. E. Pile,* of Parsons, and *John P. Manton,* of Toledo, Ohio, for the appellants.

*E. L. Burton,* of Parsons, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to enforce specific performance of a contract for the purchase of a gas and mineral lease or to recover $4,000 if the defendant refused to carry out the terms of his contract of purchase. Trial was to the court. The plaintiff prevailed and defendant appeals.

The controversy involved the sale and assignment of what may be termed the "Island lease." The "island" is in the Neosho river, in Neosho county, eleven miles northeast of Parsons. It was owned by the heirs of the late R. N. Allen, of Chanute. The testimony showed that on February 18, 1919, a lease was executed by the Allen heirs to E. E. Bishop; that later Bishop assigned the lease to the Western Gas & Pipe Line Corporation; that the Western Gas & Pipe Line Corporation was indebted to the plaintiff in approximately the sum of $2,700, and that it agreed with the plaintiff that would turn over to him the "Island lease," which he might sell and apply $2,700 of the proceeds in settlement of its indebtedness to him; that one S. H. Burt, of Toledo, Ohio, interviewed the plaintiff with a view to purchasing the lease for the defendant

Schmidt; that, after some investigation by Burt, an arrangement was made whereby the plaintiff agreed to convey the lease for a consideration of $5,000; that a memorandum was made by Burt at the time which read: Payments: November 1, $1,000; November 15, $1,000; December 1, $1,500; February 1, $1,500; Total $5,000; that plaintiff told Burt he could not close the deal unless he received $1,000; that Burt said he would have to go back to Toledo and get the check from Mr. Schmidt; that these negotiations occurred about October 15, 1921; that on October 17, Burt wrote the plaintiff stating, among other things, "I have just had a conference with Mr. Schmidt relative to the Island leases and we have decided to take them. We would like to have you get the leases from the Western Gas Company so we can do business with you and as soon as you get them write or wire and we will mail check for $1,000 as per my agreement with you"; that Burt sent plaintiff a telegram of like tenor; that plaintiff wired Burt, "Proposition accepted. Wire one thousand dollars to First National Bank, Parsons, Kansas, to be held in escrow as initial payment on leases. Will have leases assigned deposit in the bank," etc.; that on October 20, plaintiff wired Burt, "Assignment of leases is now in First National Bank, Parsons, Kansas"; that the defendant made a check for $1,000 payable to the plaintiff, delivered it to Burt, who mailed it to the plaintiff; that the plaintiff deposited in the First National Bank of Parsons the assignment of the Western Gas & Pipe Line Corporation of the lease, with directions to turn the same over to the defendant on the performance of the conditions; that later the defendant Schmidt came to Parsons, interviewed plaintiff, presenting a letter of introduction from Burt, made an investigation of the island lease, became engaged in a controversy with the plaintiff and attempted to repudiate the arrangement, hence this lawsuit.

It is contended by the defendant that the petition did not state a cause of action; that the original lease executed by the Allens to Bishop was for only the specific term of one year beginning February 18, 1919.

The lease, among other things, contained provisions that the lessee had all "exclusive rights for one year from the date hereof, to enter upon, operate for and procure oil and gas upon the following described premises . . . for the term aforesaid, for the purpose above stated only and as much longer, for said purposes, as oil or gas or either of them is found, produced and marketed with

reasonable diligence in paying quantities thereon, or therefrom, and subject to the terms and conditions hereinafter stated. Second party shall have the right to lay pipe lines and construct tanks, stations, . . . Second party expressly agrees to pay first parties at the rate of $150 per annum for the first million cubic feet capacity, or any part thereof, and $100 per annum in addition thereto for each and every additional million cubic feet capacity or fraction thereof, . . . it beng further understood and agreed by the parties thereto that in no event shall the royalties above stated, or the income to first parties herefrom, be less in value than the sum equal to $1.00 per acre per year for each successive year from and after date hereof. The said minimum annual income to first parties herefrom for each successive year to be governed and determined by the acreage held by second party on the 18th day of February of each year, that acreage to govern the next ensuing twelve months during the term hereof; and in case the royalties and receipts to first parties as above stated shall, for any six months of any year beginning with date hereof, be an amount less than fifty cents per acre for the acreage then held as above determined, said second party shall pay the first parties on the 18th day of August and February of each successive year for the six months next preceding, a sum in addition to said royalties and receipts to first parties for said six months shall amount to a sum equal to fifty cents per acre for said acreage," etc.

It was also objected that there was no provision in the lease for rental in lieu of the production of oil or gas in paying quantities and that there were no facts alleged showing the lease was kept alive beyond the year which terminated February 18, 1920, by any action of Bishop or his associates and no allegations that Bishop or his assigns at any time produced any oil or gas. Authorities are then cited to sustain the doctrine that the discovery and production of oil is a condition precedent to the continuing or vesting of any estate in the lessee.

Defendant's objections are without substantial merit.

A copy of the lease was attached to the plaintiff's petition and there was testimony showing that the rental had been entirely paid on the 18th of August, 1921, which left the lease in full force and effect at the time of the negotiations between the parties, the depositing in escrow of the assignment of the lease and at the time of the filing of the action.

In *Rose v. Lanyon,* 68 Kan. 126, 74 Pac. 625, it was said:

"If plaintiffs should desire to contract for an immediate exploration, they must have that right; and if they should desire to give an oil or gas company five years in which to sink a well, upon a consideration satisfactory to themselves, and as the result of negotiations free from imposition and fraud, they must have that right. But having deliberately made a contract of the latter description, they have no right to call upon a court to declare that it is of the other kind merely because generally it might seem to be better for farmers not to encumber their lands with mineral leases given a long time for exploration, or because generally such leases do contemplate that forfeiture shall follow a failure to explore at once." (p. 134.)

The lease in the instant case provided that upon the payment of fifty cents per acre every six months the lease could be renewed. The testimony showed that such payments had been made.

It is argued that the plaintiff's pleadings failed to show any right, title or interest under the lease, because no assignment was alleged.

The petition alleged that a copy of the assignment from Bishop to the Western Gas & Pipe Line Corporation was attached. As a matter of fact the instrument attached was a copy of a contract of purchase. The trial was concluded on the 22d of June and the case taken under advisement. Thereafter, on the 18th of September, before the decision had been announced, the plaintiff procured leave of court to amend his pleadings, attaching a copy of the assignment, and also procured leave of court to open the case and introduce further testimony, whereupon the assignment was introduced. The case was not finally completed until December 5, 1922. The defendant appears to have requested no time to meet the issue and under the liberal practice of our state it has frequently been held that an order of the trial court permitting amendment to the pleadings or opening a case for new testimony will not be sufficient ground for reversal unless the adverse party's rights are shown to have been prejudiced. No such showing is made here.

It is next objected that the petition showed that plaintiff was acting as agent of the Western Gas & Pipe Line Corporation, was not the real party in interest, and therefore could not recover.

The petition alleged, and the testimony showed that the Western Gas & Pipe Line Corporation was indebted to the plaintiff in a considerable sum and turned over to him the assignment with authority to sell it and apply the proceeds on its indebtedness to him. The corporation was made a party to the action and admitted these facts. Under the circumstances the plaintiff had sufficient interest

in the result to file the action. (*Barb-Wire Co. v. Purcell* 48 Kan. 267, 29 Pac. 160.)

It is urged that the petition did not state any tender to defendant of a sufficient assignment or lease. The testimony showed that express authority was given to the plaintiff to put in the assignment the name of the assignee. The plaintiff claimed to have such authority and the Western Gas & Pipe Line Corporation admitted such.

It is contended that there was no meeting of minds of the parties as to the time of payment; that there was a misdescription in the lease and that the alleged contract did not satisfy the statute of frauds. There was testimony showing that during the negotiations between the plaintiff and Mr. Burt, the latter made a memorandum of the amounts and dates of payment; that these figures could have referred only to the lease in question. There was also the letter from Mr. Burt to the plaintiff in which he asked the plaintiff to "get the leases from the Western Gas & Pipe Line Corporation and write or wire me and we will mail check for $1,000 as per our agreement." Burt wired plaintiff inquiring if these terms were accepted. Plaintiff wired back that they were. The defendant, through Mr. Burt, mailed the plaintiff a check for $1,000, and the plaintiff deposited the assignment in the bank in accordance with the terms of the agreement. Many other objections were made concerning which neither time nor space permits a discussion. Some of them touching the pleadings reach the degree of delicately refined theories of technicality.

In *Brooks v. Weik,* 114 Kan. 402, 408, 219 Pac. 528, in discussing the sufficiency of a petition, it was said:

"Ordinarily, it is enough fairly to inform the defendant what the suit is about, and even if inconsistencies appear, they are not fatal if, on any theory, the plaintiff states a cause of action. Whether or not the petition is technically good becomes less material after a full trial on the merits in which the subject of controversy has been thoroughly investigated."

We have given consideration to the various complaints of the defendant but find no error which would warrant a reversal.

The judgment is affirmed.