BERTHELOTE ET AL., RESPONDENTS, *v.* LOY OIL CO ET AL., APPELLANTS.

(No 7,076.)

(Submitted October 6, 1933. Decided November 29, 1933.)

[28 Pac. (2d) 187.]

Mr. J. Miller Smith, Mr. David R. Smith, Mr. Paul W. Smith, and Messrs. Logan & Smith, for Appellants, submitted a brief; Mr. David R. Smith argued the cause orally.

*Mr. Louis P. Donovan,* for Respondents, submitted a brief and argued the cause orally.

*Messrs. Logan & Child,* of Counsel for Appellants, submitted a reply brief.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is a statutory action brought under the provisions of sections 6902 to 6904, inclusive, Revised Codes of 1921, for the cancellation of an oil and gas lease, for the recovery of damages, and for the statutory penalty for the failure of the

lessee, upon demand in accordance with these statutes, to release it of record.

Plaintiffs executed the lease in question on February 26, 1926, for a term of five years "and as long thereafter as oil and gas or either of them is produced from said land by the lessee." The lease described 3,600 acres of land and named the defendant Loy Oil Company as lessee. It further provided that, if no well was commenced on the described land on or before July 1, 1926, the lease should terminate "unless" delay rentals were paid as specified. It also provided that, if the first well was a dry hole, then "unless" the payment of rentals was resumed, the lease would terminate. This lease was an "unless lease," in the form known to the oil industry as "producers 88." The recited cash consideration was $1. The lessee, in consideration of the leasing of the premises described in the lease, agreed to deliver to the credit of the lessor one-eighth of all the oil "produced and saved," and "to pay the lessor one-eighth of all gas saved at the market value for the gas from each well where gas only is found while the same is being used off the premises."

Plaintiffs by their complaint alleged that the lease was terminated and forfeited by reason of the breach of its terms and conditions during the five-year term in this: (a) That there was a failure to drill a well sufficient to test any of the sands where oil and gas in the district are usually found in commercial quantities; (b) that no oil was found, and no gas in commercial quantities; (c) that, if oil or gas was discovered in commercial quantities in the wells drilled on the premises, the lessee failed to produce and market these products; and (d) that, if gas was found in commercial quantities, the lessee failed to develop the premises by drilling additional wells.

The defendants Loy Oil Company, K. A. Laux and John Laux filed a joint answer, and the defendant R. A. Davidson filed a separate answer. As to the other defendants a default was entered as to two for failure to answer, and the action was dismissed as to others. The answering defendants by their several answers denied the breaches of the terms and conditions

of the lease, and alleged affirmatively that within the term a well was drilled producing gas in commercial quantities, which well had been and was producing gas in such quantities. They further alleged that, commencing with February 22, 1931, and continuing to the time of the bringing of the action, the plaintiffs "constantly, continually and violently interfered with the operation of the well." Issue was joined on these affirmative allegations by reply.

The pleadings contain numerous other allegations, but the foregoing *résumé* sufficiently states the issues for the purpose of deciding the questions here submitted for decision.

The drilling of the well referred to in the answers as the producing gas-well was commenced in September, 1926. A flow of gas was encountered at a depth of approximately 1,450 feet during that year. In the spring of 1927, this well was drilled to a greater depth, where a flow of water was encountered. The lessee attempted to shut off the water and utilize the flow of gas discovered the previous year. Attempts were made to drill two other wells on the leased premises, but neither gas nor oil was found in either of them.

Gas was used on the premises, about the camps, and in the drilling operations on the other wells. On February 23, 1931, or on the day following, the lessee attempted to connect the gas-well with the pipe-line running to a drilling rig operating on a neighboring lease. One of the plaintiffs asserted ownership in the pipe being used by the lessee, and removed the same to a point near his residence.

It is manifest from the record that none of the wells ever encountered any of the usual productive sands in the district or area wherein the lands in question are located.

Plaintiffs produced an expert, who testified that he made an accurate measurement, using a meter, and found that the well on May 2, 1931, had an "open flow of 46,600 cubic feet per day, and a rock pressure of 38 pounds." Witnesses testified that the only constant market for gas in that vicinity was the Montana City Pipe Line, and that the flow of gas from the well in question was not of sufficient pressure to permit the well to

be connected with this pipe-line, as no gas from the well could be forced therein. This pipe-line was located some seven miles distant from the well.

On February 27, 1931, plaintiffs served upon the lessee and other defendants notice of forfeiture of the lease and demand for a release of the same of record, which was refused. This action was commenced on June 1, 1931. No royalty was ever paid or tendered to plaintiffs prior to the service of the notice, other than the sum of $1.90, which offer was refused.

The case was tried as an action at law. No evidence was offered as to any damage other than as to attorneys' fees. A general verdict was returned in favor of the plaintiffs for $1,000 attorneys' fees, and $100 statutory penalty. Judgment in accordance with this verdict and for the cancellation of the lease was entered. The appeal is from the judgment.

The defendants contend, as they did throughout the trial at every opportunity, that the court was in error in trying the case as one at law and not in equity. They assert that, even though conceding that an action brought under the terms of sections 6902 to 6904, inclusive, supra, is an action at law, and further that though there may be implied covenants in an oil and gas lease, the breach of which may entitle the lessor to release by way of cancellation when relief is sought for the breach of implied covenants, the action is then not one at law but in equity.

By the above sections a purely statutory remedy not theretofore existing was conferred, and, although it embodies the equitable relief of a release of record, it must be classed as an action at law. (*Solberg* v. *Sunburst Oil & Gas Co.*, 70 Mont. 177, 225 Pac. 612.)

All the breaches of the terms of the lease relied upon by plaintiffs in their complaint, with the exception of the failure of the defendants to produce oil and gas within the five-year term, are predicated upon implied covenants. This lease contained no express terms prescribing the extent of either exploration, operation, development, protection against drainage, or the diligence with which these should be carried on. This is

a usual condition with oil and gas leases. (Merrill on Implied Covenants of Oil and Gas Leases, 18.)

Where, as here, a lease is granted for a nominal initial consideration, and the lessee agrees to pay in return therefor a share of the oil or gas produced from the land, it is apparent that the principal consideration for the grant is the promise of the lessee to pay the royalty. The payment of the royalty is, however, contingent upon production. Where the real purpose is thus disclosed but the lease does not contain in itself express provisions creating duties in the lessee to do such acts as were necessary for the accomplishment of that purpose, the law implies them. (Summers on Oil and Gas, 391; Merrill on Implied Covenants, 18–21; Thornton on Oil and Gas, 5th ed., secs. 154–157.)

The courts have implied various covenants in oil and gas leases in furtherance of this purpose, as is illustrated by the following cases: *Brewster* v. *Lanyon Zinc Co.*, 140 Fed. 801, 809, 72 C. C. A. 213; *J. M. Guffey Petroleum Co.* v. *Oliver*, (Tex. Civ. App.) 79 S. W. 884; *Acme Oil & Min. Co.* v. *Williams*, 140 Cal. 681, 74 Pac. 296; *Gadbury* v. *Ohio etc. Gas Co.*, 162 Ind. 9, 67 N. E. 259, 62 L. R. A. 895; *Andrews* v. *Andrews*, 256 Pa. 24, 100 Atl. 521; *Phillips* v. *Hamilton*, 17 Wyo. 41, 95 Pac. 846; *Logan Natural Gas & Fuel Co.* v. *Great Southern Gas & Oil Co.*, 126 Fed. 623, 61 C. C. A. 359; *Mansfield Gas Co.* v. *Alexander*, 97 Ark. 167, 133 S. W. 837; *Mills* v. *Hartz*, 77 Kan. 218, 94 Pac. 142.

This being an "unless" lease, it terminated ipso facto so far at least as it was expressly provided therein that it should be terminated upon the breach of its conditions. (*McDaniel* v. *Hager-Stevenson Oil Co.*, 75 Mont. 356, 243 Pac. 582; *Steven* v. *Potlatch Oil & Refining Co.*, 80 Mont. 239, 260 Pac. 119; *Bowes* v. *Republic Oil Co.*, 78 Mont. 134, 252 Pac. 800.) But was the lease so terminated upon the breach of one or more implied covenants?

Mr. Justice Van Devanter, then circuit judge, in the case of *Brewster* v. *Lanyon Zinc Co.*, supra, said: "Whatever is implied in a contract is as effectual as what is expressed. Impli-

cation is but another name for intention, and if it arises from the language of the contract when considered in its entirety, and is not gathered from the mere expectations of one or both of the parties, it is controlling."

These implied covenants are conditions of the lease under consideration, and upon the plain and substantial breach thereof the lease became terminated and no longer of any force or effect, although still appearing on the records as an effective disposal of oil and gas under the leased lands. (*Brewster* v. *Lanyon Zinc Co.*, supra; *Acme Oil & Min. Co.* v. *Williams*, supra; *J. M. Guffey Petroleum Co.* v. *Oliver*, supra.

What we have said above is with reference to the implied covenants hereinafter discussed and the facts in this case, but it is not our intention to have the foregoing general statements apply without qualification or exception to every conceivable implied covenant. To illustrate: A usual implied covenant is one against drainage, which is not here involved. The necessity of drilling offset wells is not brought about by the acts of the lessee, but by those of third parties, unless the lessee owns adjoining acreage. Hence, before a breach of an implied covenant could be claimed as substantial, the necessity of protecting the leased premises must be brought home to the lessee in some manner by reasonable notice or demand on the part of the lessor. (*Gypsy Oil Co.* v. *Champlin*, 163 Okl. 226, 22 Pac. (2d) 102, and cases there cited.)

The statutory remedy applies whenever the oil and gas lease is "forfeited" (sec. 6902, Rev. Codes 1921), and, if a lease is terminated by the breach of implied covenants, it is forfeited. (*Steven* v. *Potlatch Oil & Refining Co.*, supra.)

Defendants argue that the courts view forfeitures with disfavor and will enforce them only when the strict letter of the contract requires it. This is a correct statement of a general principle of law, but in connection with oil and gas leases, forfeitures are favored by the law. (*Solberg* v. *Sunburst Oil & Gas Co.*, 76 Mont. 254, 246 Pac. 168; *McNamer Realty Co.* v. *Sunburst Oil & Gas Co.*, 76 Mont. 332, 247 Pac. 166; *Bowes* v. *Republic Oil Co.*, supra.) Defendants assert that in the

*McNamer Case,* just cited, this court held that a suit to cancel an oil and gas lease was in equity. Such is not the case, for while it was there held that the particular suit was in equity, it is nowhere said that the equitable remedy of cancellation is exclusive.

Counsel cite a statement from Summers on Oil and Gas, page 502, to the effect that a forfeiture of a lease will not be permitted for a breach of certain implied covenants. That distinguished author, however, was there discussing remedies under "or" leases; and in section 161 of the same work in discussing remedies under "unless" leases, he expresses views not at variance with our own.

It is urged that a lease will not be forfeited until there is first a showing that an adequate remedy at law does not exist. The case of *Howerton* v. *Kansas Natural Gas Co.,* 82 Kan. 367, 108 Pac. 813, 34 L. R. A. (n. s.) 46, is cited in support of this contention; but the Kansas court in its decisions does not observe the legal distinction between an "unless" and an "or" lease, and in suits for cancellation of either type of leases they treat the cancellation as a forfeiture. (Summers on Oil and Gas, 511.) This court, it will be observed, from a perusal of the decisions cited, supra, recognizes this distinction, namely, that an "unless" lease terminates ipso facto upon the breach of its conditions; a suit to cancel such a lease merely removes it from the records, and a judgment of cancellation finds the facts which existed before the commencement of such an action. Hence, for us to follow the Kansas court in this respect would result in our reversing these decisions, which we are not disposed to do.

We therefore conclude that this action was properly triable as one at law.

Defendants offered an instruction to the effect that, if the ██ ██ lessee had on or prior to February 26, 1931, drilled a well producing oil or gas, then the terms of the lease were satisfied. The offer was denied, and this denial is assigned as error. The lease was dated February 26, 1926, and it was to remain in full force for a term of five years from that date

and as long thereafter as oil or gas, or either of them, was produced from the leased lands. The lease, therefore, expired at midnight on February 25, 1931 (*Abell* v. *Bishop,* 86 Mont. 478, 284 Pac. 525), unless it was continued under the "thereafter" clause.

The instruction was offered on the theory that under a lease as this one, the production of oil or gas in any quantity is sufficient to continue it in existence beyond the fixed term. The court instructed the jury that in order for the lease to be continued in force under the "thereafter" clause, oil or gas must be produced in "paying quantities," and defined that term to mean such an amount of production as would pay a small profit over the cost of operation of the well, excluding from consideration the initial cost of bringing the well into production.

Some courts have held that under a similar "thereafter" clause, any production which is capable of being divided is a sufficient compliance to continue the life of the lease, as in *Gillespie* v. *Ohio Oil Co.,* 260 Ill. 169, 102 N. E. 1043, and *McGraw Oil & Gas Co.* v. *Kennedy,* 65 W. Va. 595, 64 S. E. 1027, 28 L. R. A. (n. s.) 959. Suffice it to say that we are not impressed with the reasoning in the cases so holding, and decline to follow them.

Frequently oil and gas leases in the "thereafter" clause provide that the lease is to continue after the fixed term so long as oil or gas is produced in "paying quantities." Most courts hold the legal effect of that clause and of the one "so long as oil or gas is produced" to be the same; and to extend the lease under a clause such as is before us, the production must be in paying quantities. (Summers on Oil and Gas, sec. 98, pp. 315, 316; *South Penn Oil Co.* v. *Snodgrass,* 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (n. s.) 848; *Gypsy Oil Co.* v. *Marsh,* 121 Okl. 135, 248 Pac. 329, 48 A. L. R. 876; *Parks* v. *Sinai Oil & Gas Co.,* 83 Okl. 295, 201 Pac. 517.) We prefer to follow the majority rule.

The offered instruction was otherwise objectionable in that the mere discovery of oil under it validated the lease, whereas under the lease, the oil or gas must not only be discovered but

must be produced, and the production continue thereafter during the entire term.

The trial court correctly defined "paying quantities" as applied to the "thereafter" clause. (*Denker* v. *Mid-Continent Petroleum Corp.*, (C. C. A.) 56 Fed. (2d) 725, 84 A. L. R. 756; *Gypsy Oil Co.* v. *Marsh*, supra; Summers on Oil and Gas, 317.) There was no error in the refusal of the offered instruction.

Error is assigned upon the court's submitting to the jury the question of the breach of the implied covenant to market the gas discovered, if during the term it had been found in paying quantities. The only producing well on the premises struck the flow of gas, relied on as paying production, in the fall of 1926, and although it was drilled to a greater depth, the drilling operations on this particular well ceased in 1927. Some gas from it was used in the drilling operations on the lease, which use under its terms was permissible without liability for the payment of royalty. One of the theories of defendants' case, as disclosed by their answers, was that a commercial gas-well was discovered on the premises. The record is barren of any effort on their part to market the product of this well until a day or so before the expiration of the five-year term of the lease. The well had been drilled to completion for more than three years before that date, and the gas had been discovered therein more than four years prior. The lease provided for the payment of a royalty on gas-wells by a division of the proceeds therefrom. It is apparent from the lease that it was the intention of the parties that wells producing gas should be operated.

It is generally held that where, as here, the only benefit to be received by the lessor is the royalty, a covenant is implied whereby the lessee, after the discovery of oil or gas, is bound to work and operate the lease with reasonable diligence so as to bring the product to a present market and to yield to the lessor his royalties. (Merrill on Implied Covenants, 150 et seq.; *Acme Oil & Min. Co.* v. *Williams*, supra; *Gadbury* v. *Ohio etc. Gas Co.*, supra; *Indiana Oil, Gas & Dev. Co.* v. *McCrory*,

42 Okl. 136, 140 Pac. 610.) It is urged by the defendants that a different rule obtains with reference to gas-wells where there is no present market. Reliance is placed upon a decision of this court in the case of *Steven* v. *Potlatch Oil & Refining Co.*, supra, in support of this contention; but that decision was based on certain express provisions of the particular lease under consideration which permitted the lessee to "shut in" gas-wells when there was no present market, the like of which is not here.

The implied covenant to market gas after discovery does not require the lessee in every instance to market the same, nor does the failure to so market the product result in a breach of the covenant in every case. The standard of compliance with this implied covenant to use reasonable diligence in producing and marketing gas is the diligence which would be exercised by the ordinarily prudent persons under similar circumstances. (Summers on Oil and Gas, p. 22; *Strange* v. *Hicks*, 78 Okl. 1, 188 Pac. 347.) This is a question of fact that will depend upon the facts and circumstances of each case.

The court over objection instructed the jury as follows: "No. 15. The court instructs you that where, as in this case, the consideration for the lease is solely the payment of royalties (except for the nominal consideration of $1.00 paid at the time the lease was given), there is an implied covenant on the part of the lessee, not only that the wells will be sunk with reasonable diligence, but that if oil or gas is produced in paying quantities in any well or wells drilled by the lessee, such well or wells will be diligently operated for the best advantage and benefit of the lessee and lessors. And the lessee is bound to diligently work and operate the lease so as to bring the product to a present market, and so as to properly yield the lessors their royalties. If you find from a preponderance of the evidence that the lessee failed to perform its obligations under the lease as herein defined, and that it was in default in such performance on the twenty-seventh day of February, 1931, when the plaintiffs herein gave their notice of forfeiture and demanded the release of the oil and gas lease in question, then

in such case you should return your verdict in favor of the plaintiffs and assess their damages in accordance with these instructions." The instruction was faulty in that the jury was told that it was the duty of the lessee to proceed diligently to bring the product to a present market, while reasonable diligence is all that is required, and instruction No. 15 should have so stated.

The trial court over the objection of defendants instructed the jury as follows: "No. 12. The court instructs you that if the defendants discovered gas upon the leased premises in paying quantities, it became the duty of the lessee to cause such gas to be produced and marketed for the mutual benefit of the lessors and the lessee, and it also became the duty of the lessee to cause other wells to be drilled and operated in the reasonable development of the property for the purposes indicated in the lease, and failure of the lessee to perform such duties subjected the lease to forfeiture by the lessors, and in such case your verdict should be for the plaintiffs." In this instruction the court told the jury peremptorily that upon the discovery of gas in paying quantities, there was a duty on the part of the lessee to reasonably further develop the premises. Instruction No. 12 was erroneous in that it omitted the qualification that the lessee was only bound so to do with reasonable diligence.

If the well was producing gas in paying quantities, then there was an implied obligation, under the terms of the lease, to use reasonable diligence to develop the demised premises so long as the enterprise could be carried on profitably. (Merrill on Implied Covenants, sec. 43; Summers on Oil and Gas, 414; *Masterson* v. *Amarillo Oil Co.*, (Tex. Civ. App.) 253 S. W. 908; *Freeport Sulphur Co.* v. *American etc. Co.*, 117 Tex. 439, 6 S. W. (2d) 1039, 60 A. L. R. 890), even where no question of drainage is involved (*Daughetee* v. *Ohio Oil Co.*, 263 Ill. 518, 105 N. E. 308; *Highfield Co.* v. *Kirk*, 248 Pa. 19, 93 Atl. 815; Merrill on Implied Covenants, 125.)

The court in its instruction No. 12 used the term "paying quantities," which was elsewhere correctly defined when con-

sidered in connection with the "thereafter" clause of a lease; but when used in connection with the implied covenant to drill additional wells, it should include, rather than exclude, the cost of drilling operations. (Summers on Oil and Gas, 317; *Manhattan Oil Co.* v. *Carrell,* 164 Ind. 526, 73 N. E. 1084.) No objection was made to the instruction on this ground, and no proper instruction covering the point was offered.

Section 9191, Revised Codes 1921, provides: "The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect." This court in the case of *Copenhaver* v. *Northern Pacific R. Co.,* 42 Mont. 453, 113 Pac. 467, 471, in discussing the application of this statute to cases pending on appeal, said: "This brings us to a phase of the case which affords a proper opportunity for a few observations concerning the duty of this court in the determination of appeals in civil actions. Section 6593, Revised Codes [1907], provides that no judgment shall be reversed by reason of any error in the proceedings which does not affect the substantial rights of the parties. We doubt if the bench and bar of the state have given this statute the consideration, scope, force, and effect to which it is entitled. It is plain and requires no interpretation. This court is commanded to give judgment on appeal without regard to errors which do not affect the substantial rights of the parties. The statute was designed to prevent reversals of causes wherein substantial justice has already been done. It was intended to put a speedy end to litigation, when that object can be attained without injustice. The power to determine the ultimate question whether the substantial rights of an appellant have been violated must reside somewhere. The Constitution framers and the legislative assembly, reaching out, apparently, toward that most desirable end—a fair, impartial, and speedy investigation and determination of matters in issue between litigants—have vested the power in this court. Not without safeguards however. Before a case reaches here, the appellant's cause, in actions at

law, has been adversely determined by a trial judge and a jury, unless he has waived the latter, and in all suits in equity by a chancellor; all sworn to decide according to the law and the evidence. The courts all agree that, presumptively, the initial decision is correct. That decision is simply affirmed by this court. The statute last cited will be invoked and applied in both letter and spirit, whenever, in future, it is possible to do so."

It is disclosed by the record that gas was discovered in the only well that ever produced gas on the entire lease, more than four years prior to the service of notice of forfeiture. The record is silent as to any effort on the part of the lessee to market the gas. There is no proof of an entire absence of a market for gas in the quantity which their well was capable of delivering during any or all of this period of time. True, the plaintiffs offered evidence as to the capacity of the well, the location of a pipe-line, and that the well in question did not afford sufficient pressure to force gas therefrom into the pipe-line. Defendants contend that these facts are sufficient to excuse them from marketing the gas. The lessee was required either to show reasonable efforts on its part to market the gas or at least an entire absence of all demand for the product. The proof in the record falls short of these requirements. Hence the evidence was insufficient to support a finding that the defendants had used reasonable diligence to market the gas, if we assume that the well was producing gas in paying quantities. In this state of the record the trial court would have been warranted in directing a verdict for plaintiffs, if such a request had been made.

This court has held that where the correct result was reached in the trial of an action at law, even though the jury had admittedly been erroneously instructed, the cause falls within the rule of the statute which forbids this court to reverse a judgment because of any error or defect in the proceedings not affecting the substantial rights of the parties. (*Sherris* v. *Northern Pac. Ry. Co.*, 55 Mont. 189, 175 Pac. 269; see, also, *Howell* v. *Bent*, 48 Mont. 268, 137 Pac. 49.)

We accordingly hold that the errors committed by the trial court in instructing the jury did not affect the substantial rights of the defendants, and therefore there was no reversible error.

The court instructed the jury that it was the duty of the ▓▓▓▓ lessee, under the implied terms of the lease, to drill a gas-well necessary to penetrate the usual producing strata in the territory where the leased premises are located, and that the breach of this implied covenant required a verdict for the plaintiffs. The giving of this instruction is urged as error.

Many courts hold that there is an implied covenant to explore and test the leased lands within a reasonable time. Most, if not all, of these decisions are in cases where there was a covenant to drill a test well, but at no fixed time. Where, as here, courts have had before them an "unless" lease, many have held that there is no implied covenant to explore and test where rentals for delay are provided. (*Rose* v. *Lanyon Zinc Co.,* 68 Kan. 126, 74 Pac. 625; *Southwestern Oil Co.* v. *McDaniel,* 71 Okl. 142, 175 Pac. 920; *Eastern Oil Co.* v. *Beatty,* 71 Okl. 275, 177 Pac. 104; *Lone Star Gas Co.* v. *McCullough,* (Tex. Civ. App.) 220 S. W. 1114; *Poe* v. *Ulrey,* 233 Ill. 56, 84 N. E. 46.) Other courts adopt the rule that under this type of lease the rentals may be refused and demand made to drill, and thereupon a covenant to explore or test will be implied. (Merrill on Implied Covenants, sec. 22 et seq.)

The lease before us contains provisions for the payment of delay rentals. The pleadings are silent on the question of the payment of rentals. The record is also silent on this subject, although the defendants inquired of one witness on direct examination as to the amount of rentals paid, to which inquiry an objection was sustained. No offer of proof was made. No attempt was made to prove when any rentals were paid. The commencement of the drilling of the first well was delayed until after the first rental-paying date was passed. This well, however, was commenced early in the term of the lease. Two other wells were commenced and drilled thereafter. Certainly, during the drilling of these three wells no rentals were paid.

In view of the fact that no allegations appear in any of the pleadings asserting the payment of rentals, we must treat the case as though none were paid; and the lease, so far as we are here concerned, is in the same condition as though it contained no delay-rental provisions. The clause for the payment of these rentals, so far as the facts alleged are concerned, was inoperative. The lease by its terms was to expire in five years if no oil was produced. This was the exploratory period. It was clearly contemplated that within such period of time the lands were to be explored, which exploration could only be accomplished by drilling a well into the usual productive sands in that territory. Therefore a covenant was implied to drill a well, at least during the fixed term of five years, to test the strata wherein gas and oil were usually found in the territory or area where the well was being drilled. (See Merrill on Implied Covenants, 146.)

Numerous errors are assigned on the refusal of the trial court to submit to the jury instructions on the issue that the plaintiffs had interfered with the defendants in their operation of the gas-well. Much of the evidence on the question of interference by the plaintiffs related to a date subsequent to the service of the notice of the declaration of forfeiture by plaintiffs; and since the court instructed the jury to the effect that defendants were not required to operate the well after the service of such notice, such evidence became unimportant as not tending to support that issue. There was evidence received tending to show that a few days before the service of this notice one of the plaintiffs did remove the pipe-line connecting the well in question with another through which it was the intention to sell gas for drilling operations. The evidence, however, showed, and it is not denied, that this pipe, as well as certain bailers which defendants assert they needed for the successful operation of the well, were either the property of the plaintiff or held by him as security for an existing obligation. Nowhere does it appear in the record that this property was the property of the defendant Loy Oil Company. We find no provision in the lease, nor do we know of any rule of law appli-

cable thereto, which would require the plaintiffs to permit the defendants to use their property in the operation of the gas-well.

Since it appears from the record that the extent of plaintiffs' interference during the term of the lease was the forbidding of the use of this personal property in these operations and taking the same from the possession of the defendants, and since there was no substantial evidence in the record to support defendants' contention of interference, the trial court was not in error in refusing to instruct on this issue.

At the close of the testimony plaintiffs asked leave to amend their complaint to conform to the proof by alleging, in substance, that the well drilled was not drilled to a depth sufficient reasonably to test the location for oil or gas, nor to a depth sufficient to penetrate any of the sands in which oil or gas in that district is usually or commonly found in commercial quantities. Over objection the amendment was allowed. This ruling is urged as error.

Plaintiffs on the trial of the cause secured from the defendants and offered in evidence the log of the well, showing its depth and the nature of the formation penetrated; and with this information they offered testimony of experts based thereon that the usual productive sands in the district had not been penetrated. As a part of their offer to amend they asserted that they had not been in possession of this information until the trial of the cause. Under the statute (sec. 9187, Rev. Codes 1921), to allow amendments is the rule, to deny them is the exception. (*Leggat* v. *Palmer*, 39 Mont. 302, 102 Pac. 327.) The power to allow or disallow amendments at any stage of the trial is within the discretion of the trial court. If no abuse is shown, the court's action will be approved on appeal. (*De Celles* v. *Casey*, 48 Mont. 568, 139 Pac. 586; *Williams* v. *Thomas*, 58 Mont. 576, 194 Pac. 500.) We are unable to see wherein the trial court abused its discretion in permitting the amendment and accordingly there was no reversible error.

Numerous errors are assigned in the refusing of offered instructions and overruling objections as to instructions given.

What we have already said effectually disposes of those not herein specifically discussed, and it is unnecessary to prolong this opinion by an individual discussion of each ruling with reference to instructions.

Many errors are specified, directed at the court's rulings on the admission and exclusion of testimony. These specifications of error were not argued in the brief or on the hearing of the cause. We do not find after our examination of them that the trial court in any of these rulings committed error which was prejudicial to the rights of the defendants.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGST-MAN, MATTHEWS and STEWART concur.

Rehearing denied January 10, 1934.