**STIMSON et al. v. TARRANT et al.**

**No. 158.**

District Court, D. Montana, Great Falls
Division.

Oct. 14, 1941.

Gunn, Rasch, Hall & Gunn, of Helena,
Mont., for plaintiffs.

George E. Hurd, of Great Falls, Mont.,
for defendants.

PRAY, District Judge.

This is a suit to cancel an oil and
gas lease. Plaintiffs call it: "an action
to clear title from a cloud created by a
recorded instrument valid on its face but
void as to the plaintiffs' title."

The theory of the case according
to plaintiffs is that the oil and gas lease
in question terminated when the production
of oil and gas from the premises therein
described was suspended in January, 1938,
pursuant to the terms of the lease, as fol-
lows: "It is agreed that this lease shall
remain in force for a term of five years
from this date and as long thereafter as
oil or gas, or either of them, is produced

from said lands by the lessee." The origi-
nal lease was dated December 22, 1930,
and the assignment to R. C. Tarrant, one
of the defendants herein, was dated July
18, 1932. Another pertinent paragraph
of the lease which should be mentioned
in connection with the above quoted, reads
as follows: "If lessee shall fail to com-
mence the drilling of any well herein pro-
vided for within the time specified (unless
the time is extended by the payment of ren-
tal), all of lessee's rights hereunder shall
thereupon terminate at the option of lessor.
If lessee shall fail to perform any of the
other terms or conditions hereof then
all of his rights hereunder shall terminate,
unless lessee shall perform the same with-
in thirty days after written notice from
lessor specifying the condition or condi-
tions wherein lessee is at fault which no-
tice may be mailed lessee at Cut Bank,
Montana." Under the facts, the last sen-
tence of the foregoing paragraph becomes
of primary importance. The failure to
commence drilling not being in issue under
the lease, then if the lessee shall fail to
perform any of the other terms or condi-
tions hereof, the lessee's rights shall termi-
nate, unless upon written notice to lessee,
specifying the condition or conditions
wherein lessee is at fault, he shall perform
within the thirty days provided in the no-
tice.

The evidence discloses that there was
a temporary suspension of about thirteen
months in pumping oil from the producing
wells. The lease required the production
of oil on the part of the defendants, and
if they failed to keep this covenant, then
should not it be regarded as one of the
"other terms and conditions hereof" which
required a thirty days' notice. Plaintiffs
claim the termination of the lease as of
January 1st to 25th, 1938, and yet they
served no notice and raised no objection,
but permitted defendant to go ahead and
expend $6,500 on another well which he
completed in March, 1939. It appears that
defendant drilled seven wells on the lease
from 1933 to 1939 at an expense of $82,-
470.85; that production to end of 1939
amounted to $203,538.08, and that the ac-
counts show that he suffered a loss of
$43,941.13.

According to the plain language of the
lease and the law which would seem to
govern under the facts presented, the fail-
ure of lessor to observe this requirement
as to notice might be sufficient in itself

to justify a dismissal of the case, without further consideration of the voluminous record consisting of nearly 450 pages. But the court has considered the record and many of the authorities cited by counsel and finds a grave question presented as to whether the plaintiffs would be entitled to prevail on the merits. There appear to be equitable considerations here that should be taken into account, such, for instance, as the time, labor and outlay of defendant Tarrant, and good faith disclosed in the production of oil in paying quantities covering a long period, and likewise the adverse market conditions which have been shown to exist. The important issue on the merits, as the court views it, is to determine whether the equitable considerations are sufficiently clear and convincing as to justify a refusal to decree a termination or forfeiture of the lease for failure to produce during the period aforesaid. The failure for a long time to administer the estate of Alice Long Miller, the lessor, in the jurisdiction where the oil producing lands were situated seems to have been another cause of delay in orderly procedure under the lease. It could hardly be expected that royalties would be paid to plaintiffs in the absence of a decree determining heirship of the plaintiffs, although it appears that defendant Tarrant did pay such royalties before probate proceedings were commenced. Defendant Tarrant testified that if he had known there was a considerable amount of money due the state and federal government for taxes and the attorney and administrator for fees, that he probably would have withheld royalty checks some time before, but that he had no advices from the administrator to that effect during that time. It appears that the delay in completing the administration of the Miller estate was due in part to the illness of counsel for the administrator. All proper costs and charges should be paid and a decree determining heirship should be entered, and the estate closed, if it has not already been done, and thereafter all royalties shown to be due plaintiffs should be promptly paid. Defendant's labor and investment developed the property even to a greater extent than the basic lease required. Although plaintiff has shown there were sales of oil during the shut-in period in question it also appears that there was over-production and lack of markets during the same period, and that defendant appears to have been reasonably diligent in his efforts.

An extension of time for drilling another well, in writing, was granted defendant Tarrant by the Barnes Butler Oil Company, the other defendant herein, "owing to unsatisfactory market conditions prevailing during the year 1938, and the inability to dispose of crude oil production, it is deemed inadvisable to carry out said provision during the year 1938." If such a condition in the oil market did not exist it would hardly be expected that this company, interested as were the plaintiffs in making money out of the enterprise, would have entered into such an agreement. From the evidence it appears that 900 barrels of oil were produced in January, 1938, from the Miller lease and pumped into all available storage tanks on the lease; that the defendant used all available storage facilities and at great expense enlarged the refinery. It appears that the pipe line company would not receive his oil for storage unless there was a prospect of immediate sale. The defendant, with many years experience in the oil industry, considered it better business judgment, even though storage had been available, to leave the oil in the ground than pay storage charges. The evidence shows there was no drainage of oil while the wells were closed, and defendant claims there was an increase in production when they were opened. The defendant testified that he was operating the wells on the Miller lease both before and since this suit was commenced; and that he began marketing the oil about eleven months before the suit was begun.

Therefore, can it be said that defendant Tarrant failed in a substantial way in the primary duty of production, taking all the conditions and circumstances into account. One case strongly relied upon by plaintiffs is that of Hutchinson v. McCue, 4 Cir., 101 F.2d 111 wherein, among other things, it appears that the fact of discovery with elements of effort and expense entailed is properly considered in determining whether lessee has failed to perform obligations under the lease to produce or to pay. In that case the lease was executed in April, 1924, and the wells were shut in for nearly four and one half years. The rentals specified in the lease were not paid for six years, but certain moneys were paid as a compromise to certain heirs of lessor, not the appellants. At the time all production ceased it appears that there was a ready market and

sales could have been continued indefinitely if the assignees had so desired. It would seem that the facts in the instant case are much more favorable to the contentions of the defendant than those in the case above cited. Another authority which has caused considerable discussion in its interpretation is that of Berthelote et al. v. Loy Oil Company et al., 95 Mont. 434, 28 P.2d 187, 192. In that case the court clearly stated the rule as follows: "The implied covenant to market gas after discovery does not require the lessee in every instance to market the same, nor does the failure to so market the product result in a breach of the covenant in every case. The standard of compliance with this implied covenant to use reasonable diligence in producing and marketing gas is the diligence which would be exercised by the ordinarily prudent persons under similar circumstances. Summers on Oil & Gas, p. 422; Strange v. Hicks, 78 Okl. 1, 188 P. 347. This is a question of fact that will depend upon the facts and circumstances of each case. * * * It is disclosed by the record that gas was discovered in the only well that ever produced gas on the entire lease, more than four years prior to the service of notice of forfeiture. The record is silent as to any effort on the part of the lessee to market the gas. * * * The lessee was required either to show reasonable efforts on its part to market the gas or at least an entire absence of all demand for the product." The argument that a different rule should be observed where oil is the product involved is not convincing, under the authorities examined, in a suit in equity, in view of the circumstances existing here. The fact that the above case was one at law tried before a jury does not prevent the recognition of a principle which applies equally well in equity. But it is true, as counsel assert, that the Loy case presents a different state of facts.

The court has considered all of the several questions raised in this suit but does not believe that any necessary purpose would be served by going further into the endless details of argument and citation of authorities which so abundantly appear in the record.

The defendant kept the plaintiffs informed as to the difficulties that were being encountered in an effort to market the oil and no objections were made. No notice had been given, as the lease required, that defendant was in default, at any time,

and the wells had been reopened and oil pumped and marketed eleven months before the suit was commenced. If the question of notice were not in the case at all, taking all of the evidence into account, favorable and unfavorable, and the greater weight of authority, as it appears to the court, it would not seem fair or equitable to deprive the defendant of the fruits of his labor and large investment by terminating this lease according to the demands of the plaintiffs, which fail to offer any equitable adjustment with defendant.

The court is therefore of the opinion that the defendants should prevail in this suit, and recover their costs therein expended, and it is so ordered. Findings and conclusions will be signed accordingly.