No. 89-498

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

NOEL L. SUNDHEIM, BERTHA SUNDHEIM
and LEONA M. JOHNSON,

      Plaintiffs and Appellants,

-v-

REEF OIL CORPORATION, a Montana
corporation, WOODS PETROLEUM
CORPORATION, a foreign corporation,
and ANDY HIESTAND, as Personal
Representative of the Estate of
FRANK HIESTAND, deceased, d/b/a
Saratoga Production Company,

      Defendants and Respondents.



APPEAL FROM:  District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Charles L. Neff; Bjella Neff Rathert Wahl & Eiken;
Williston, North Dakota

      For Respondent:

          Loren J. O'Toole; O'Toole & O'Toole; Plentywood,
Montana (for Reef Oil Corp. & Andy Hiestand)
W. Anderson Forsythe; Moulton, Bellingham, Longo &
Mather; Billings, Montana (for Woods Petroleum)


                Submitted on Briefs: January 31, 1991

                    Decided: February 14, 1991

Filed:

_____
            Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiffs, Noel Sundheim, Bertha Sundheim and Leona Johnson (hereinafter referred to as Sundheims) appeal from an order of the Fifteenth Judicial District, Roosevelt County, granting summary judgment in favor of defendants, Reef Oil Company, the estate of Frank Hiestand, and Woods Petroleum Corporation. We affirm in part and reverse in part.

The issues presented for our review are:

1. Whether the District Court correctly granted summary judgment on the Sundheims' allegations of breach of the implied covenants to protect and reasonably develop the leasehold and breach of the prudent operator standard, which were asserted against Reef Oil Company and the estate of Frank Hiestand;

2. Whether the District Court correctly granted summary judgment in favor of Woods Petroleum Corporation on the grounds that Sundheims' claims against it were barred by the statute of limitations;

3. Whether the District Court correctly assessed Rule 11 sanctions against Sundheims and their attorney.

The Sundheims are the owners of mineral interests in land located in Roosevelt County in northeastern Montana. In May of 1967, they entered into oil and gas leases covering these interests. Those leases were entered into with W.C. Kaufman and they had ten year primary terms.

On March 10, 1969, the leases were assigned to Woods Petroleum Corporation. In 1974, Woods Petroleum entered into a Dry Hole

Contribution Agreement with Anadarko Production Company, which had a lease on land adjacent to the Sundheim leasehold. Woods agreed to provide financial assistance in drilling a well on a lease held by Anadarko. In return, Anadarko promised to share all well data and structural information obtained through drilling the well. Anadarko found oil and the well initially produced 596 barrels of oil a day.

Woods Petroleum decided to drill its own well on the Sundheim leasehold. This well, Sundheim No. 1, was completed in March of 1975 and had an initial production of 419 barrels per day.

In 1976, production on the Sundheim No. 1 well began to decline. In an effort to increase production Woods installed a pumping unit on the well. Production, however, continued to decline and in 1977 the sucker rods broke and production ceased.

Following this breakdown, Woods Petroleum considered whether further investment should be made to rework the well and reestablish production. Woods determined that no more than $20,000.00 would be spent on reworking the well. According to an internal memorandum, its engineers determined that low production was caused by reservoir conditions. No mention is made of the possibility that the well was not producing large enough amounts of oil due to mechanical problems. Some work was then done on the well; however due to Woods' belief that the decline in production was caused by reservoir conditions, the well was cemented in, on July 20, 1977.

Following this discontinuance, Reef Oil Corporation contacted

Woods Petroleum. Reef Oil was interested in acquiring the open well bore, tubing, wellhead, tanks and other equipment still intact and left at the well in return for Reef Oil assuming responsibility for operating and eventually plugging the well. Woods agreed to this arrangement and in July of 1978 the Sundheim No. 1 well was "sold" to Reef Oil. Before this "sale" took place Reef Oil entered into new oil leases with the plaintiffs. These leases provided for a term of three years and contained provisions for annual delay rentals of $1.00 per acre per year.

According to deposition testimony, Reef Oil did not have the financial ability to redrill the well. Apparently, it was Reef Oil's intent to acquire the well and then attempt to interest others to develop the prospect. Reef Oil retained E. Earl Norwood, a certified petroleum geologist to do an in-depth geologic analysis. Norwood reported the decline in production was caused by mechanical problems and was not caused by reservoir conditions. This conclusion is supported by another engineer, Robert M. Watkins. According to Mr. Watkins, the well's low production probably resulted because it was not backflushed with fresh water to clear out salt accumulations which restricted the flow of oil.

Reef Oil did not have the financial ability to rework the well. Consequently, nothing was done with it until the early part of 1980, when Reef Oil assigned the Sundheim leasehold to Frank Hiestand. In 1981, Heistand worked out a farmout arrangement with a Canadian Oil Company who drilled a new well, the Sundheim No. 2 well, which was 300 feet to the south of the Sundheim No. 1 well.

4

This new well yielded only salt water. According to the Sundheims, as much as 145,000 barrels of oil were drained from their leasehold by adjacent oil wells during the time period between 1977 and 1981.

On January 30, 1986 the Sundheims filed a complaint against Reef Oil Corporation, Woods Petroleum Corporation, Frank Hiestand and American Penn Energy. American Penn Energy was dismissed by stipulation of the parties. In their amended complaint against the remaining three defendants, the Sundheims set forth three separate counts alleging that the defendants breached the implied covenant to protect their leasehold from drainage, the implied covenant to reasonably and prudently develop the leasehold, and the implied covenant to reasonably and prudently operate the existing Sundheim No. 1 well. Frank Hiestand subseqeuntly died and Andy Hiestand, the personal representative of his estate was substituted as a party-defendant.

On February 17, 1987, Reef Oil moved for summary judgment. Reef's motion was granted on May 18, 1987. In its memorandum in support of its order of summary judgment, the District Court held that the Sundheims were barred from bringing an action for breach of the implied covenant to protect from drainage because they had not served written notice upon Reef Oil and demanded it drill an offset well. The court further held that Reef Oil did not breach the implied covenant of reasonable development because the Sundheims accepted delay rentals and because this covenant does not arise until after production has been obtained on the leasehold. The District Court dismissed Sundheims' third cause of action on

the ground that the implied covenant to prudently operate a well is not an independent cause of action.

Woods Petroleum moved for summary judgment in January of 1988. The District Court granted this motion and held that any claims against Woods Petroleum were barred by the statute of limitations, § 27-2-202(1), MCA. On August 4, 1989, the District Court dismissed Hiestand from the action for the same reasons contained in its order granting summary judgment in favor of Reef Oil. Finally, the District Court, believing that the Sundheims' attorneys purposely misled it, assessed Rule 11 sanctions against the plaintiffs and their attorney in the amount of $13,924.90. This appeal followed.

## I. Reef Oil Corporation and Frank Hiestand.

As stated above, the Sundheims based this lawsuit on three separate allegations. In summary, their amended complaint alleged that the defendants breached the implied covenants of protection, to reasonably develop the leasehold and to prudently operate the existing well. As a result, Sundheims allege the defendants are liable for damages. The District Court granted summary judgment in favor of defendants Reef Oil and Frank Hiestand on each of these counts. We will discuss each issue separately.

## A. The Implied Covenant to Protect from Drainage.

Each of the Sundheims' allegations are based upon covenants which have been implied by common law, into oil and gas leases. The purpose of the implied covenants is to fully effectuate the intentions of the parties to a lease. Obviously, the primary

6

intention is to produce oil and gas for a profit and to obtain royalties for the lessor. U.V. Industries Inc. v. Danielson (1979), 184 Mont. 203, 602 P.2d 571. To insure this result is obtained the courts have implied, through the express terms of oil and gas leases, certain duties which must be performed by the lessee. These duties include the covenant to protect from drainage and the covenant to reasonably develop the leasehold, both of which are at issue in the case now before us.

The Sundheims maintain that Reef Oil Corporation and Frank Hiestand breached the covenant to protect their leasehold from drainage. In their brief, the Sundheims estimate that as much as 145,000 barrels of oil were drained from their leasehold by adjacent oil wells. They further argue that Reef Oil and Hiestand, in accordance with their duty to protect, should have drilled offset wells in order to capture the oil before it was drained. Because these defendants failed to drill such wells, they breached the covenant to protect, and are therefore liable for damages for the value of the oil drained from Sundheims' leasehold.

The District Court did not reach the merits of the Sundheims' argument because it found that they were barred from asserting their claim due to the fact that they failed to give written notice of the drainage or demand that an offset well be drilled. In reaching its conclusion, the court relied upon U.V. Industries Inc. v. Danielson (1979), 184 Mont. 203, 602 P.2d 571, where we stated:

> The offset drilling rule generally requires the lessor
> . . . to serve written notice or demand upon the lessee

7

or its assigns to drill an offset well as a precondition to the latter's duty to drill. Supra, at 584.

Based upon this language, the District Court interpreted U.V. Industries very narrowly to hold that the Sundheims could not bring an action for breach of the implied covenant to protect. All parties to this action agree that no written notice or demand was served.

In U.V. Industries the plaintiffs brought a lawsuit alleging that the defendants failed to protect their leasehold from drainage and were liable for damages. The case involved four defendants. Two of the defendants owned an interest in a well, which was located on adjoining property. Apparently, this well caused the drainage to the plaintiff's leasehold.

Faced with these facts, we held that written notice or demand was not required to be given the two defendants who held interests in the adjoining well. We based this conclusion upon the fact that these two defendants, through their ownership of the draining well, obviously knew of the necessity to protect the plaintiff's leasehold. Thus, application of the notice requirement was unnecessary. Two other defendants who held no such interest, were not deemed to have any knowledge of the drainage. Therefore, it was held that they must be given notice of their obligation to protect before any duty on their part would arise.

The District Court interpreted U.V. Industries to hold that written notice or demand is always a prerequisite to a lawsuit for breach of the covenant to protect, unless the defendant owns the adjoining well which is draining the plaintiff's property. The

8

Sundheims, on the other hand, maintain that under U.V. Industries, written notice or demand is only required when the defendant does not have knowledge of the drainage. According to Sundheims, a notice requirement in a situation when a defendant already has knowledge would be wholly unnecessary. Because there is evidence which tends to establish that Reef Oil and Hiestand knew of the draining of their leasehold, the Sundheims further argue that the District Court erred in granting summary judgment based upon lack of notice.

We agree with the Sundheims' interpretation of U.V. Industries. There is no sound reason to require a lessor to give a lessee notice of drainage in an action for damages, if the lessee already has such knowledge. Under the implied covenant to protect, a lessee is charged with the duty to act as a reasonable operator and to protect the leaseholder's interest. This duty requires the lessee to manage the leasehold in such a manner as to bring profit to both himself and the lessor. Obviously, if the lessee failed to drill an offset well, while knowing the leasehold was being drained, he would fail to meet this duty. In such a circumstance, he should not be excused for the sole reason that the lessee failed to comply with a requirement that is unnecessary.

Our conclusion on this issue is consistent with the overall holding of U.V. Industries. Both the defendants and the District Court based their conclusion upon a single statement which occurred in a lengthy and complicated opinion. However, the statement relied upon must be read and understood within the context of the

9

entire opinion.

In U.V. Industries, we stated that generally a lessor must "serve written notice or demand upon a lessee to drill an offset well as a precondition to the latter's duty to drill." U.V. Industries, 602 P.2d at 584. However, as rationale for this general rule we quoted a passage from an earlier case which stated:

> " . . . A usual implied covenant is one against drainage, which is not here involved. The necessity of drilling offset wells is not brought about by the acts of the lessee, but by those of third parties, unless the lessee owns adjoining acreage. Hence, before a breach of an implied covenant could be claimed as substantial, the necessity of protecting the leased premises must be brought home to the lessee in some manner by reasonable notice or demand on the part of the lessor." (Emphasis supplied.) Berthelote v. Loy Oil Co. (1933), 95 Mont. 434, 446, 28 P.2d 187, 190.

As this passage clearly indicates, it is only reasonable notice which is required as a precondition to the duty to drill an offset well. The passage does not indicate that written notice is required. Moreover, a close reading of U.V. Industries reveals that the written notice requirement was mentioned only once. Throughout the rest of the opinion, this Court spoke in terms of reasonable notice, or notice.

Clearly, the reasonable notice requirement is satisfied when the lessee has knowledge of drainage. Section 1-1-217, MCA, defines notice as follows:

> **1-1-217. Notice--actual and constructive.** (1) Notice is:
> (a) actual whenever it consists of express information of a fact;
> (b) constructive whenever it is imputed by law.
> (2) Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice

10

of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such facts.

As this statute indicates, a person is deemed to have constructive notice when he is in possession of all of the relevant facts and circumstances. Certainly, constructive notice rises to the level of reasonable notice as required by Berthelote v. Loy Oil Co. (1933), 28 P.2d 187, 94 Mont. 434. Therefore, we now clarify our earlier holding in U.V. Industries and hold that before a lessee's duty to drill an offset well arises, he must have reasonable notice of the necessity to protect the leasehold. Such notice can either be express, from the lessor, or constructive, gained from the surrounding circumstances. Further support of this holding is found in the general rule that oil and gas leases are to be construed liberally in favor of the lessor and against the lessee. See Clawson v. Berklund (1980), 188 Mont. 48, 610 P.2d 1168; Thomas v. Standard Development Co. (1924), 70 Mont. 156, 224 P. 870.

This rule is only applicable to those cases in which a lessor is seeking relief in the form of damages, however. If he is seeking other forms of relief, such as forfeiture of the lease, he must give written notice in order to give the lessor a chance to cure the breach. See Summers, Oil and Gas Volume 2 § 412 (1990).

The burden of proof is upon the lessor to establish the fact that the lessee knew of the drainage. Therefore, upon remand, the Sundheims must prove that both Reef Oil Corporation and Frank Hiestand knew or should have known that the Sundheim leasehold was being drained by the adjacent wells.

11

## B.  The Implied Covenant to Reasonably Develop the Leasehold.

As their second issue, the Sundheims argue that the District Court erred in granting summary judgment on their claim that Reef Oil and Frank Hiestand breached the implied covenant to reasonably develop the leasehold.  The District Court held that this covenant was not breached because the Sundheims accepted delay rental payments.  As further justification for its ruling, the court held that  the covenant to reasonably develop does not arise until after production has been obtained on the leasehold.  Because we uphold the lower court based upon the prior reasoning, we will not review the latter.

In short, the Sundheims maintain that their acceptance of delay rental payments does not excuse the defendants from fulfilling their duty to reasonably develop their leasehold.  They argue that because oil was discovered and pumped in paying quantities from the Sundheim No. 1 well, Reef Oil and Frank Hiestand had a continuing duty to further develop the leasehold. According to Sundheims, the payment of delay rentals has no bearing on this duty.

We need not dwell upon the legal intricacies of the Sundheims' argument.  The issue can be resolved through resort to the clear wording of the leases.  Paragraph 2 of these leases states:

> It is agreed that this lease shall remain in force for a term of three years from date and as long thereafter as oil or gas of whatsoever nature or kind or either of them is produced from said land or premises pooled therewith or drilling operations are continued as hereinafter provided.  If prior to discovery of oil or gas on said land or on acreage pooled therewith, lessee should drill a  dry hole or holes thereon, or if after

12

discovery of oil or gas production thereafter should cease for any cause, this lease shall not terminate if lessee commences additional drilling or reworking operations within sixty (60) days thereafter or (if it be within the primary term) <u>commences or resumes the payment or tender of rental on or before the rental-paying date next ensuing after expiration of three (3) months from the date of completion of a dry hole or cessation of production</u>. (Emphasis added.)

Paragraph 4 of the leases states:

If operations for the drilling of a well for oil or gas are not commenced or if there is no oil or gas being produced on said land or on acreage pooled therewith as hereinafter provided on or before one year from the date hereof, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor . . . the sum of $320.00 which shall operate as a rental and cover the privilege of deferring the commencement of operations for drilling of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of operations for drilling of a well may be further deferred for like periods of the same number of months successively.

According to these two sections of the Sundheim leases, Reef Oil had a duty to explore for or produce oil and gas from the Sundheim leasehold. If it failed to adequately carry out this duty, the terms allowed the Sundheims to terminate the lease. However, Reef Oil could, instead of engaging in drilling or production operations, make delay rental payments of $320.00 per year. Upon payment of this sum, Reef Oil was excused from the drilling and operating requirements contained in the lease.

It is undisputed that the delay rental payments were made by Reef Oil and were accepted by the Sundheims. Therefore, by the terms of the contract, Reef Oil was not impliedly required to engage in further development of the Sundheim leasehold. The rental clauses contained in the lease were presumably bargained for

13

and are supported by consideration. We will not look beyond these express provisions in order to impose a duty upon Reef Oil which is in contravention of their terms. In short, the rental clause contained in the Sundheim leases relieves Reef Oil of all drilling obligations save that of offset drilling. Williams & Meyers, Oil and Gas Law § 835.1 (1990). See also Hemingway, Law of Oil and Gas § 8.10 2d Ed. (1983). The duty to drill an offset well is imposed through the covenant to protect, not through the covenant to reasonably develop. Therefore, there was no breach of the development covenant and summary judgment on this issue was properly granted.

## C. Prudent Operator/Reasonable Man Standards

The Sundheims maintain that Reef Oil and Frank Hiestand, in addition to breaching implied covenants to the lease, also violated the prudent operator standard. This standard is best understood through analogy to the reasonable man standard of tort law. Simply stated, the prudent operator is a reasonable man engaged in oil and gas operations. He is a hypothetical oil operator who does what he ought to do not what he ought not to do with respect to operations on the leasehold. Williams and Meyers, Oil and Gas Law § 806.3(1990).

Sundheims argue that Reef Oil and Frank Hiestand breached this obligation because they did not develop the leasehold. Instead, they took the lease for speculative purposes, and while they were searching for an individual to commence drilling operations substantial drainage occurred. The District Court granted summary

14

judgment in favor of the defendants on this count. It held that the prudent operator standard was not in itself an independent cause of action and the prudent operator standard is applied in conjunction with and serves to define the other implied covenants.

We agree with the District Court. We have previously held that the Sundheims have presented a valid cause of action for breach of the implied covenant to protect. The duty to act as a prudent operator underlies this contractual obligation. In order to prevail on this issue, the Sundheims must prove at trial that, under the circumstances of their case, Reef Oil and Frank Hiestand did not act as reasonably prudent operators to prevent drainage. Proof of this issue necessarily entails a showing that actual drainage occurred and that an offset well would have produced oil in paying quantities. Williams and Meyers, Oil and Gas Law § 822 (1990).

Proof of the second element of the above test would necessarily establish that the defendants failed to act as reasonably prudent operators and, assuming drainage can be established, that they breached the covenant to protect. This rule of law is supported by the rationale that a reasonably prudent operator would drill an offset well if he could gain a profit and if it was necessary to protect the value of the lease. On the other hand, no breach of this standard, could be established if it cannot be shown that such a well could be drilled at a profit to the lessee. Accordingly, in such circumstances there would be no breach of the covenant to protect.

15

It is clear from the facts of this case, that the Sundheims allegations of breach of the covenant to protect and breach of the prudent man standard are one in the same. Proof of one necessarily entails proof of the other. Therefore, the District Court correctly granted summary judgment dismissing the allegation alleging breach of the prudent operator standard.

## II. Woods Petroleum Corporation.

The District Court granted summary judgment in favor of Woods Petroleum Corporation on the grounds that all claims against it were barred by the statute of limitations. This action was brought on the 30th day of January 1986. The applicable statutes of limitations in this case are eight years for breach of the terms of a written contract, § 27-2-202(1), MCA, three years for allegations of negligence, § 27-2-204, MCA, and two years for damage to property, § 27-2-207, MCA. All parties agree that the eight year statute should apply to those counts alleging breaches of covenants arising out of an oil and gas lease. Therefore, it is clear that Sundheims' claims under such counts are barred.

The leases executed between the Sundheims and Woods Petroleum were executed on May 11, 1967 and May 23, 1967. They were subject to a ten-year primary term. Therefore, by their express language, the leases expired in May of 1977, unless production of oil and gas continued after this date. The applicable provision that supports this conclusion reads:

> It is agreed that this lease shall remain in force for
> a term of ten years from date, and as long thereafter as
> oil or gas or either of them, is produced from said land
> by the lessee, its successors or assigns . . .

16

It is undisputed that production ceased on the Sundheim No. 1 well in July of 1977. The well was abandoned and cemented, and Woods Petroleum performed no further activity on the well after this date. The Sundheims themselves stated, in their complaint, that the well was abandoned in July of 1977. Given these admissions, it is clear that the issue presented is a matter of law, and is properly resolved through summary judgment.

Absent a reworking clause Montana law dictates that cessation of production by the lessee after the primary term automatically terminates the lease. Miami Oil Producers Inc. v. Larson (1983), 203 Mont. 225, 661 P.2d 1260. The primary terms in the Sundheim lease terminated in May of 1977. Production on the Sundheim leasehold ceased in July of 1977. According to Miami Oil, the lease automatically terminated on that date. Once the lease terminated, all obligations on Woods Petroleum's part also ended. The date for the beginning of the statute of limitations was in July of 1977. The Sundheims brought their lawsuit on January 30 of 1986. This date is outside of the eight year statute and all claims against Woods Petroleum are barred.

Through a convoluted interpretation of the lease, the Sundheims attempt to extend the termination date to May of 1978. Through reliance upon this erroneous argument, they attempt to save their lawsuit against Woods from the statute of limitations. We do not find it necessary to fully evaluate this argument. The clear language of the lease speaks for itself.

Next, the Sundheims argue that this Court should toll the

17

statute of limitations on equitable principles. However, they have not come forward with any evidence or sufficient reason to delay its operation. The Sundheims have offered no proof of fraud or concealment on the part of Woods Petroleum. *Carlson v. Ray Geophysical Division* (1971), 156 Mont. 450, 481 P.2d 327. On the contrary, the Sundheims were well aware of their injury in 1977 when they stopped receiving royalty checks. Mr. Sundheim knew that the reason the royalty checks stopped was that production on the Sundheim No. 1 well ceased. The District Court's order dismissing Woods Petroleum is affirmed.

## III. Rule 11 Sanctions

The District Court granted Reef Oil's motion for Rule 11 sanctions and assessed a sum of $13,924.90 against the Sundheims and their attorneys. Apparently, the District Court determined that the Sundheims repeatedly misrepresented the holding of U.V. Industries. During argument and briefing at the lower court level, the Sundheims maintained that U.V. Industries' notice requirements were inapplicable to this case, because the Sundheims were seeking damages, while the plaintiffs in U.V. Industries were seeking forfeiture. A close reading of U.V. Industries however, reveals that it was a case for damages.

While it is true that the Sundheims erroneously misinterpreted the U.V. Industries decision, we disagree with the District Court's decision to assess sanctions. We note that later on in the proceedings, the Sundheims changed tactics and argued for a change in the law to not require notice in cases seeking damages. Their

18

argument is amply supported by the authorities. At least two treatises on Oil and Gas Law state that a lessor suing for breach of the covenant to protect need not give notice or demand protection, if he is only seeking damages. See Hemingway, Oil and Gas § 8.11 2d.Ed. (1983); Merrill, Covenants Implied in Oil and Gas Leases § 113 (1964). Because the Sundheims argument finds support in the law and because this opinion holds in their favor on the notice issue, we hold sanctions were not warranted.

## Conclusion

The District Court's order awarding summary judgment in favor of Reef Oil Corporation and the estate of Frank Hiestand on the issues of breach of the covenant to develop and the prudent operator standard are affirmed. Summary judgment dismissing Woods Petroleum Company is also affirmed. The District Court's orders granting summary judgment to Reef Oil and Frank Hiestand on the issue of breach of the covenant to protect and its order granting Rule 11 sanctions is reversed. This case is remanded for proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_(signatures)_

Justices